BRETT A. SHUMATE
Assistant Attorney General
Civil Division
ERIC J. HAMILTON
Deputy Assistant Attorney General
JOSEPH E. BORSON
Assistant Branch Director
ELIZABETH B. LAYENDECKER (Cal Bar No. 357429)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 616-5046
Email: Elizabeth.B.Layendecker@usdoj.gov

*Attorneys for United States*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.,* | Case No. 3:26-cv-1417-RFL |
| Plaintiffs, | **FEDERAL DEFENDANTS' MOTION TO DISMISS AND TO TRANSFER** |
| v. | |
| CHRISTOPHER WRIGHT, in his official capacity as Secretary of Energy, *et al.,* | Judge: Hon. Rita F. Lin |
| Defendants. | |

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

BACKGROUND ............................................................................................................................. 1

I.      Legal Background ............................................................................................................. 2

II.     Factual and Procedural Background .................................................................................. 2

LEGAL STANDARDS ................................................................................................................... 4

ARGUMENT .................................................................................................................................. 4

I.      Plaintiffs' Claims Challenging the Grant Terminations Should be Transferred .............. 4

        A.      The Tucker Act Impliedly Forbids the Relief Plaintiffs Seek. ............................ 5

        B.      Plaintiffs Have an Adequate Remedy in the Court of Federal Claims. ............... 9

II.     The Court Should Dismiss the Remaining Severed Claims. ............................................ 11

        A.      Plaintiffs Lack Standing to Challenge the DOE Memo. ..................................... 11

        B.      The DOE Memo is Not Final Agency Action. .................................................... 13

        C.      The Ultra Vires Claim Should Be Dismissed for Want of Jurisdiction ............. 15

CONCLUSION ............................................................................................................................. 16

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

# TABLE OF AUTHORITIES

**Cases**

*Am. Ass'n of Univ. Professors v. U.S. Dep't of Just.*,
No. 25-CV-2429 (MKV), 2025 WL 1684817 (S.D.N.Y. June 16, 2025) ................................. 8

*Am. Libr. Ass'n v. Sonderling*,
No. CV 25-1050 (RJL), 2025 WL 1615771 (D.D.C. June 6, 2025) ....................................... 7

*Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*,
738 F.3d 387 (D.C. Cir. 2013)........................................................................................ 14

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015)................................................................................................... 5, 15

*Bd. of Govs. of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
502 U.S. 32 (1991).......................................................................................................... 15

*Bennett v. Spear*,
520 U.S. 154 (1997)........................................................................................................ 14

*Boaz Hous. Auth. v. United States*,
994 F.3d 1359 (Fed. Cir. 2021) ...................................................................................10, 11

*Christopher Vill., L.P. v. United States*,
360 F.3d 1319 (Fed Cir. 2004) ......................................................................................... 9

*City of Saint Paul v. Wright*,
No. 25-cv-03899 (APM), 2026 WL 913112 (D.D.C. Apr. 3, 2026) ....................................... 13

*Clapper v. Amnesty Int'l USD,*
568 U.S. 398 (2013)........................................................................................................ 13

*Cobell v. Kempthorne*,
455 F.3d 301 (D.C. Cir. 2006)......................................................................................... 14

*Cobell v. Norton*,
240 F.3d 1081  (D.C. Cir. 2001)...................................................................................... 14

*Columbus Reg'l Hosp. v. United States*,
990 F.3d 1330 (Fed. Cir. 2021) ....................................................................................... 10

*Consol. Edison Co. of N.Y. v. U.S., Dep't of Energy*,
247 F.3d 1378 (Fed. Cir. 2001) ...................................................................................... 7, 9

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
38 F.4th 1099 (D.C. Cir. 2022) ....................................................................................... 2, 6

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ........................................................................................................... 12

*Dalton v. Specter*,
  511 U.S. 462 (1994) ........................................................................................................... 16

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
  655 F.3d 1337 (Fed. Cir. 2011) .......................................................................................... 9

*Dep't of Educ. v. California*,
  604 U.S. 650 (2025) ............................................................................................... 2, 6, 7, 12

*E. V. v. Robinson*,
  906 F.3d 1082 (9th Cir. 2018) ...................................................................................... 15, 16

*FDIC v. Meyer*,
  510 U.S. 471 (1994) ............................................................................................................. 4

*Fed. Aviation Admin. v. Cooper*,
  566 U.S. 284 (2012) ......................................................................................................... 2, 5

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ........................................................................................................... 12

*Galloway Farms, Inc. v. United States*,
  834 F.2d 998 (Fed. Cir. 1987) ............................................................................................. 4

*Great-West Life &Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ............................................................................................................. 6

*Griffin v. United States*,
  590 F.3d 1291 (Fed. Cir. 2009), *reh'g denied*, 621 F.3d 1363 (Fed. Cir. 2010) ................... 4

*Larson v. Domestic & Foreign Com. Corp.*,
  337 U.S. 682 (1949) ........................................................................................................... 15

*Lewis v. Casey*,
  518 U.S. 343 (1996) ........................................................................................................... 12

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ..................................................................................................... 13, 14

*Massachusetts v. Kennedy*,
  No. 1:25-cv-10814-WGY, 2025 WL 1747213 (D. Mass. June 23, 2025) ............................ 8

*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982) ............................................................................................. 6

*Nat'l Institutes of Health v. Am. Pub. Health Ass'n*,
  606 U.S. ---, 145 S. Ct. 2658 (2025) ........................................................................... *passim*

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) .................................................................................................. 13

*Nuclear Regulatory Comm'n v. Texas*,
  605 U.S. 665 (2025) ................................................................................................ 15

*Rattlesnake Coalition v. EPA*,
  509 F.3d 1095 (9th Cir. 2007) ................................................................................ 13

*Regents of Univ. of California v. Shalala*,
  82 F.3d 291 (9th Cir. 1996) .................................................................................... 12

*San Juan City Coll. v. United States*,
  391 F.3d 1357 (Fed. Cir. 2004) ...............................................................................11

*Sanders v. United States*,
  252 F.3d 1329 (Fed. Cir. 2001) ...............................................................................11

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016), as revised (May 24, 2016) ..................................................... 4

*Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*,
  480 F.3d 1116 (Fed. Cir. 2007) .....................................................................2, 9, 11

*Sustainability Inst. v. Trump*,
  No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) ................................... 5, 15

*Telecare Corp. v. Leavitt*,
  409 F.3d 1345 (Fed. Cir. 2005) ................................................................................ 9

*Thakur v. Trump*,
  163 F.4th 1198 (9th Cir. 2025) ................................................................................. 6

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ................................................................................................ 12

*Tucson Airport Auth. v. Gen. Dynamics Corp.*,
  136 F.3d 641 (9th Cir. 1998) ................................................................................ 5, 7

*United States v. Cook Cnty.*,
  170 F.3d 1084 (Fed. Cir. 1999) ................................................................................ 4

*United States v. Mitchell*,
  463 U.S. 206 (1983) .............................................................................................. 2, 6

*United States v. Sherwood*,
  312 U.S. 584 (1941) .................................................................................................. 2

*United States v. Texas*,
  599 U.S. 670 (2023) ................................................................................................ 12

*United States v. Tohono O'odham Nation*,
   563 U.S. 307 (2011).............................................................................................................. 8

*United States v. Yakima Tribal Ct.*,
   806 F.2d 853 (9th Cir. 1986)............................................................................................. 16

*Warth v. Seldin*,
   422 U.S. 490 (1975)............................................................................................................. 4

*We the People Found., Inc. v. United States*,
   485 F.3d 140 (D.C. Cir. 2007)............................................................................................. 5

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008).............................................................................................................. 13

*Wisconsin Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985)........................................................................................... 13

*Zhou v. Lyons*,
   813 F. Supp. 3d 1052 (C.D. Cal. 2025).............................................................................. 13

**Statutes**

5 U.S.C. § 702......................................................................................................................... 2

5 U.S.C. § 704...................................................................................................................... 2, 9

28 U.S.C. § 1292.................................................................................................................. 1, 9

28 U.S.C. § 1346..................................................................................................................... 2

28 U.S.C. § 1491.................................................................................................................. 2, 5

28 U.S.C. § 1631.............................................................................................................. 1, 4, 16

28 U.S.C. § 1691....................................................................................................................11

**Rules**

Fed. R. Civ. P. 21.................................................................................................................... 9

Rule 52.2 of the Rules of the United States Court of Federal Claims .......................................11

**Regulations**

2 C.F.R. Part 200................................................................................................................... 10

2 C.F.R. § 200.340 ............................................................................................................... 10

**Other Authorities**

U.S. Department Of Energy, Model Cooperative Agreement,
  https://www.energy.gov/sites/prod/files/2016/07/f33/eere_110_model_cooperative_agreement.pdf.. 10

U.S. Dep't of Energy, *Secretary Wright Announces New Policy for Increasing Accountability,
  Identifying Wasteful Spending of Taxpayer Dollars* (May 15, 2025),
  https://www.energy.gov/management/pf-2025-28-secretarial-policy-ensuring-responsibility-
  financial-assistance ..................................................................................................................... 3

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

## INTRODUCTION

Plaintiffs have filed a lawsuit containing claims that either challenge agency terminations of their contractual agreements and seek to enforce those terminated contracts through the payment of money, or are entirely meritless. This Court lacks jurisdiction over the former, which should be transferred to the Court of Federal Claims, and this Court should sever and dismiss the latter under Rule12(b)(1).

Under the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over alleged breaches of contract by the United States in excess of $10,000. By statute, the United States may seek transfer of any matter from the federal district courts when jurisdiction lies instead in the Court of Federal Claims. 28 U.S.C § 1631. The Federal Circuit then has exclusive jurisdiction over any resulting interlocutory appeals of the district court's decision on that motion. *Id.* § 1292(d)(4)(A). This is because Congress has designated a single tribunal, the Court of Federal Claims, to adjudicate a set of claims seeking money from the United States based upon contracts, and it has set a single appellate tribunal, the Federal Circuit, to ensure that this exclusivity is fairly and comprehensively policed.

This case principally concerns a host of Department of Energy ("DOE") grant[1] terminations in October 2025. Plaintiffs challenge a DOE Memo and ensuing grant terminations on APA and constitutional grounds, seeking to vacate the Memo and enjoin the termination of the grant agreements. Under the statutory framework set forth by Congress, Plaintiffs' claims challenging those terminations are committed to the exclusive jurisdiction of the Court of Federal Claims, and should be severed and transferred there. Though some of Plaintiffs' claims extend beyond grant terminations, they should be dismissed because no federal court has jurisdiction to entertain them. Defendants respectfully request that the Court transfer Plaintiffs' claims challenging the grant terminations or, in the alternative, dismiss them for lack of jurisdiction, and dismiss the remaining claims for lack of jurisdiction.

## BACKGROUND

### I. Legal Background

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United*

---

[1] For purposes of this motion, grant means a DOE financial assistance award signed by DOE contracting officer and includes both grants and cooperative agreements.

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

1

*States v. Sherwood*, 312 U.S. 584, 586 (1941). To sue a federal agency and its officials, a plaintiff must therefore identify a waiver of sovereign immunity and show that its claim falls within the waiver's scope. *See Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 290 (2012) ("a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text"). So "if one wishes to sue the United States for a wrong committed by one of its agents (and agencies), one must find an appropriate Act of Congress that waives the Government's immunity from suit for that particular wrong." *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1121 (Fed. Cir. 2007).

Two statutes waiving sovereign immunity are at issue here: the APA and the Tucker Act. Under 5 U.S.C. § 702, the APA provides "a limited waiver of sovereign immunity for claims against the United States" seeking non-monetary relief. *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105 (D.C. Cir. 2022). That waiver only applies when "there is no other adequate remedy in a court." 5 U.S.C. § 704. Moreover, "[t]he APA's waiver of sovereign immunity does not apply," so long as "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) ("*California*") (per curiam) (quoting 5 U.S.C. § 702). The Tucker Act contains its own waiver of sovereign immunity. Congress consented to suit and granted "the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* (quoting 28 U.S.C. § 1491(a)(1)); *see United States v. Mitchell*, 463 U.S. 206, 215 (1983) (recognizing the waiver of sovereign immunity). And Congress has expressly forbidden federal district courts from hearing contract claims against the United States exceeding $10,000 in value. *See* 28 U.S.C. § 1346(a)(2). Thus, the "Tucker Act both waives sovereign immunity for, and grants the Court of Federal Claims exclusive jurisdiction over, [certain] actions for money damages of more than $10,000." *Suburban Mortg. Assocs.*, 480 F.3d at 1121. "With these limitations, the APA and the Tucker Act were understood to cover quite different challenges to Government action." *Id.* at 1122.

## II. Factual and Procedural Background

On May 15, 2025, the Secretary of Energy issued a statement, accompanied by a policy memorandum, which announced DOE's "inten[t] to conduct focused reviews of awards and other forms of financial assistance[.]" U.S. Dep't of Energy, *Secretary Wright Announces New Policy for Increasing*

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

*Accountability, Identifying Wasteful Spending of Taxpayer Dollars* (May 15, 2025) ("DOE Memo").[2] This review effectuated DOE's policy to ensure that financial assistance awards were "among other things, financially sound and economically viable, aligned with national and economic security interests, and consistent with Federal law and this Administration's policies and priorities and program goals . . . (Standards)." *Id.* The memorandum further explained that awards would be subject to case-by-case review and, "[i]f it is determined that a project meets Standards, then those projects will proceed. If it is determined that projects do not meet Standards, DOE may modify the project or, DOE in its discretion, may terminate the project based on the outcome of DOE's evaluation, as allowed by law." *Id.* After the Secretary issued the memorandum, DOE initiated its review of existing financial awards, and sent termination notices for 24 grants in May 2025 and approximately 285 grants in October 2025. The October 2025 terminations included awards to all 13 Plaintiffs in this case, as well as the ARCHES grant.

The instant action was filed on February 18, 2026, by those 13 states, challenging the DOE Memo and grant terminations that may have occurred pursuant to that Memo, and seeking reinstatement of the terminated grants enumerated in the complaint. *See* Pls.' Compl., ECF No. 1. Counts I and IV allege that the DOE Policy and grant terminations amount to DOE's cancellation of spending programs, thereby violating the separation of powers. *Id.* ¶¶ 209–17. Count II is brought on effectively the same grounds, but under the APA. *Id.* ¶¶ 218–22. Count III challenges the DOE Policy and terminations on the grounds that they represent programmatic changes that are arbitrary and capricious, and also allege that the DOE Policy is a rule subject to 553 notice and comment rulemaking. *Id.* ¶¶ 223–36. Counts V and VI allege that the termination of the ARCHES grant violates the First Amendment, *id.* ¶¶ 241–46, equal protection under the Fifth Amendment, *id.* ¶¶ 247–50.

## LEGAL STANDARDS

A court lacks jurisdiction where the federal government has not waived its sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature"). 28

---

[2]  https://www.energy.gov/management/pf-2025-28-secretarial-policy-ensuring-responsibility-financial-assistance

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

U.S.C. § 1631 provides that when a court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action" to any court in which the case could have been filed. Transfer is subject to a claim-by-claim analysis. *United States v. Cook Cnty.*, 170 F.3d 1084, 1089 (Fed. Cir. 1999). It is in the interests of justice to transfer claims so long as they are not frivolous. *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed. Cir. 1987). The alternative is to simply dismiss the claims for lack of jurisdiction instead of transferring them. *See id.*

Under Rule 12(b)(1), the Court may dismiss for lack of subject-matter jurisdiction. "For purposes of ruling on a motion to dismiss for want of standing, . . . courts must accept as true all material allegations of the complaint." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). But as the party invoking federal jurisdiction, Plaintiffs "bear[] the burden of establishing" the court's jurisdiction. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016).

**ARGUMENT**

Jurisdiction over Plaintiffs' claims seeking to contest grant terminations and reinstate grant agreements (and thus pay the money allegedly owed under them) properly lies in the Court of Federal Claims. Accordingly, pursuant to 28 U.S.C. § 1631, the Court should transfer Plaintiffs' claims challenging those terminations (or dismiss them for lack of jurisdiction). The remainder of Plaintiffs' claims should be severed and dismissed because the DOE Memo is not final agency action, nor have Plaintiffs established Article III standing to challenge it prospectively.

**I.    Plaintiffs' Claims Challenging the Grant Terminations Should be Transferred.**

To sue a federal agency or its officials, Plaintiffs must identify an express waiver of sovereign immunity and show that their claims fall within the waiver's scope. *See Cooper*, 566 U.S. at 290. Plaintiffs necessarily rely on the APA's waiver of sovereign immunity for all but their ultra vires claims (which are separately barred for reasons described in Part II). But, under section 702, immunity is not waived if there is an adequate remedy in another court or if another statute impliedly precludes relief. Both are true for Plaintiffs' claims challenging the grant terminations.

As an initial matter, although Plaintiffs' constitutional claims do not reference the APA, they are nonetheless subject to adequate remedy and implied preclusion bars of the APA and Tucker Act.

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

4

Generally, a plaintiff asserting constitutional claims will rely on the APA's waiver to bypass sovereign immunity.  *See, e.g.*, *We the People Found., Inc. v. United States*, 485 F.3d 140, 143 (D.C. Cir. 2007) (Kavanaugh, J.) (recognizing a typical standalone First Amendment claim as permitted under the APA's Section 702 waiver).  However, that waiver is subject to the adequate remedy and implied preclusion bars—dooming Plaintiffs here.  *See, e.g.*, *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations."); *Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) ("[I]t appears unlikely that Plaintiffs' ultra vires claims, which allege the Government violated the Constitution when it terminated or suspended Plaintiffs' grants, would provide a detour around the Tucker Act" (citing *Armstrong*, 575 U.S. at 327–28)).  Accordingly, courts routinely consider whether constitutional claims brought in cases implicating the Tucker Act are forbidden under the adequate remedy or implied preclusion bars.  *See, e.g.*, *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998).  And because both the APA and constitutional claims seek effectively the same contractual remedy, these jurisdictional limits apply to both sets of claims.

### A.  The Tucker Act Impliedly Forbids the Relief Plaintiffs Seek.

The Tucker Act grants the Court of Federal Claims exclusive jurisdiction to "render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States[,]" 28 U.S.C. § 1491(a)(1), and waives sovereign immunity for cases falling within its grant of jurisdiction.  *Mitchell*, 463 U.S. at 212.  The Tucker Act therefore displaces district court jurisdiction over contract claims against the United States.  *California*, 604 U.S. at 651; *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 606 U.S. ---, 145 S. Ct. 2658 (2025) ("*NIH*").

In determining whether "a particular action" is "at its essence a contract action" subject to the Tucker Act, courts consider "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought[.]"  *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982); *see, e.g.*, *Crowley*, 38 F.4th at 1106 ("the question is whether Crowley's suit against the GSA . . . is 'at its essence' contractual") (quoting *Megapulse*, 672 F.2d at 968.).  Recent Supreme Court rulings confirm that Plaintiffs' claims contesting the grant terminations are, in essence, contract actions.  In *California*,

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

the Court held that the government was likely to succeed in showing that similar grant termination claims were committed to Tucker Act jurisdiction of the Court of Federal Claims. 604 U.S. at 651. In reviewing the temporary restraining order "enjoining the Government from terminating various education-related grants" and "requir[ing] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue," the Court concluded that the district court's order amounted to judicial enforcement of the Government's contractual obligations. *Id.* at 650. The Court vacated the district court's order, as such enforcement is committed to the jurisdiction of the Court of Federal Claims. *Id.* at 650–51 (citing *Great-West Life &Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). Similarly, in *NIH*, the Supreme Court reiterated that the APA's "'limited waiver of [sovereign] immunity' does not provide the District Court with jurisdiction to adjudicate claims 'based on' the research-related grants or to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." 145 S. Ct. at 2659 (citing *California*, 604 U.S. at 651); *see also Thakur v. Trump*, 163 F.4th 1198, 1204 (9th Cir. 2025) (holding that claims brought under the APA's waiver of sovereign immunity challenging grant terminations were subject to Tucker Act jurisdiction because the relief sought was designed to enforce an obligation to pay money).

Here, Plaintiffs also seek reinstatement of terminated grants and enforcement of contractual obligations thereunder. Count I seeks "an injunction undoing the termination or abandonment of any of the awards at issue here[.]" *See* Pls.' Compl., Prayer for Relief ¶ 1(c). Counts I and II seek injunctive relief that would result in reinstatement of the terminated grant awards. *Id.* ¶ 2(d). Counts II and III seek declaratory relief that the terminations were unlawful. *Id.* ¶ 2(c). Counts V and VI seek an injunction reinstating a terminated grant. *Id.* ¶ 3. Plaintiffs' entitlement to such relief is entirely dependent upon their contracts with DOE. And the relief sought by Plaintiffs, if granted, would amount to "enforc[ing] a contractual obligation to pay money." *California*, 604 U.S. at 651 (citation omitted). At bottom, Plaintiffs are requesting to enjoin the terminations of grant agreements and, accordingly, to compel the enforcement of the government's monetary obligations pursuant to those agreements. Such claims are essentially contract claims and therefore committed to the jurisdiction of the Court of Federal Claims. *See NIH*, 145 S. Ct. at 2665 ("[P]laintiffs' claims challenging NIH's grant terminations likely

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

6

belong in the Court of Federal Claims . . . [t]he reason is straightforward:  The core of plaintiffs' suit alleges that the Government unlawfully terminated their grants." (Kavanaugh, J. concurring in part)).

This rule applies with equal force to Plaintiffs' purported constitutional claims, which must also be transferred to the Court of Federal Claims (Counts I, V, and VI).  These claims are equally premised on the notion that the Government is bound by a contractual obligation to provide funding.  Because the obligation for payment "is in the first instance dependent on the contract, these claims are contractually-based" and "the district court lacks jurisdiction under the Tucker Act." *Tucson Airport Auth.*, 136 F.3d at 647 (9th Cir. 1998) (concluding district court lacked jurisdiction under the Tucker Act over constitutional due process claim because it was contractually based); *see also, e.g.*, *Consol. Edison Co. of N.Y. v. U.S., Dep't of Energy*, 247 F.3d 1378, 1385–86 (Fed. Cir. 2001) (directing district court to transfer case sounding in contract but asserting constitutional claims to the Court of Federal Claims because the Court "can supply an 'adequate remedy' to prevent the constitutional wrongs alleged by [plaintiff]").

Tucker Act jurisdiction turns on whether the claim is, in essence, a contract claim, even when plaintiffs invoke another area of law to claim that a contract was terminated unlawfully.  Claims brought under constitutional provisions can be, in essence, contract claims. *See Am. Libr. Ass'n v. Sonderling*, No. CV 25-1050 (RJL), 2025 WL 1615771, at *7 (D.D.C. June 6, 2025) ("The heart of these allegations is that defendants have failed to comply with Congress's statutory mandates for IMLS.  However, the main mechanism through which defendants allegedly violated those mandates is by suspending and terminating grants . . . . [P]laintiffs' framing of their claims for relief under the APA and the Constitution do not necessarily take this case out of the ambit of the Tucker Act.").  Were the rule otherwise, a plaintiff could evade the Tucker Act through artful pleading.  Under the precedents recently issued by the Supreme Court, as explained above, Plaintiffs bring contract claims, notwithstanding their invocation of constitutional provisions.  For example, when unions sued the Federal Government to challenge the termination of grants to Columbia University—which included a First Amendment challenge—the district court faithfully applied *California*, explaining that "the Supreme Court" has "characterized" such grants "as contracts" and so jurisdiction properly lay in the Court of Federal

Claims. *Am. Ass'n of Univ. Professors v. U.S. Dep't of Just.*, No. 25-CV-2429 (MKV), 2025 WL 1684817, at *14 (S.D.N.Y. June 16, 2025).

To be sure, Plaintiffs also seek to set aside and enjoin the DOE Memo. Although Plaintiffs challenge both the DOE Memo and the grant terminations, those claims cannot travel together through the federal courts. This precise set of circumstances was addressed by Justice Barrett in *NIH*. 145 S. Ct. at 2662 ("Two-track litigation results from '[t]he jurisdictional scheme governing actions against the United States,' which 'often requires . . . plaintiffs to file two actions in different courts to obtain complete relief in connection with one set of facts.'" (Barrett J., concurring) (quoting *United States v. Tohono O'odham Nation*, 563 U.S. 307, 323 (2011) (Sotomayor, J., concurring in judgment))). The *NIH* plaintiffs brought a similar set of claims, alleging that grant terminations made pursuant to a secretarial policy memo violated the APA and the separation of powers. *See Massachusetts v. Kennedy*, No. 1:25-cv-10814-WGY, 2025 WL 1747213, at *2 (D. Mass. June 23, 2025). As Justice Barrett explained, while the district court had jurisdiction to entertain the guidance document, the remainder of the claims were committed to the jurisdiction of the Cout of Federal Claims. *NIH*, 145 S.Ct. at 2662. Here, Counts I, II, and III also seek to enjoin the DOE Memo. *See* Pls.' Compl. Prayer for Relief ¶ 1(a)–(b) (Count I); *id.* ¶ 2(a)–(b), (c) (Counts II and III). Accordingly, Defendants request that the Court transfer Counts I, II, III, V, and VI to the extent they challenge the grant terminations, but not to the extent they challenge the DOE Memo. The aspects of those claims challenging only the DOE Memo should be severed, as they cannot be transferred to the Court of Federal Claims. *See* Fed. R. Civ. P. 21 ("The Court may also sever any claim against a party."). However, as explained below, those claims independently fail.

**B. Plaintiffs Have an Adequate Remedy in the Court of Federal Claims.**

Congress expressly limited the waiver of sovereign immunity under the APA to only situations where "there is no other adequate remedy in a court." 5 U.S.C. § 704. The Federal Circuit is clear that this adequate remedy bar is jurisdictional. *Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1327 (Fed Cir. 2004); *Consol. Edison Co. of N.Y. v. U.S. Dep't of Energy*, 247 F.3d at 1383–84; *see also Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1344 (Fed. Cir. 2011) (recognizing the

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

8

same). Since any appeal of a ruling on this motion goes to the Federal Circuit, its law controls. *See* 28 U.S.C. § 1292(d)(4)(A).

Relief under the APA's waiver of sovereign immunity is unavailable where the Court of Federal Claims can "provide an adequate remedy under the Tucker Act for the alleged wrong[.]" *Suburban Mortg. Assocs.*, 480 F.3d at 1125. Under long-standing Federal Circuit precedent, "[t]he availability of an action for money damages under the Tucker Act . . . is presumptively an 'adequate remedy[.]'" *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1349 (Fed. Cir. 2005). As a result, "when the plaintiff's claims, regardless of the form in which the complaint is drafted, are understood to be seeking a monetary reward from the Government" then the only question is whether the litigant can seek money in the Court of Federal Claims. *Suburban Mortg. Assocs.*, 480 F.3d at 1126. Thus, the question becomes whether the Court of Federal Claims has jurisdiction to hear Plaintiffs' grant termination claims. To do so, courts must assess (1) whether there is a contract between the United States and Plaintiffs; (2) whether the contract is enforceable for money damages in the Court of Federal Claims; and (3) whether Plaintiffs' claims, regardless of how they are framed, ultimately seek a monetary reward from the Government. If all three inquiries are answered affirmatively, jurisdiction lies in the Court of Federal Claims, and the adequate remedy bar applies.

*First*, Plaintiffs' grant agreements are contracts with the United States. "[F]ederal grant agreements a[re] contracts when the standard conditions for a contract are satisfied, including that the federal entity agrees to be bound." *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021). The Federal Circuit follows the standard four-part test for a binding contract: "(1) mutuality of intent to contract; (2) offer and acceptance; (3) consideration; and (4) a government representative having actual authority." *Id.* at 1339.

Here, all four criteria are met. The language of the standard agreements "speak[] in terms of binding obligation[s][.]" *See id.*; *see, e.g.*, U.S. Department Of Energy, Model Cooperative Agreement.[3] As do the detailed regulations generally governing these programs and incorporated by reference into

---

[3]https://www.energy.gov/sites/prod/files/2016/07/f33/eere_110_model_cooperative_agreement.pdf

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

the agreements. *See Columbus Reg'l Hosp.*, 990 F.3d at 1339 (relying on such a regulation to determine that an agreement was a contract); *see also* 2 C.F.R. Part 200; *id.* § 200.340 (providing detailed procedures for termination when terms and conditions are violated). As for offer and acceptance, the awards were offers from DOE, and "evinced [the agency's] willingness to enter into a bargain and justified [the recipient's] understanding that its assent would consummate the bargain." *See Columbus Reg'l Hosp.*, 990 F.3d at 1339. And "[a]cceptance was effected when the parties' authorized agents signed the agreement." *See id.* at 1339–40. Consideration "turns on the conditions attached to [the agency's] grants." *Id.* at 1340. Here, the terms and conditions of the awards set a variety of terms Plaintiffs are required to abide by. Because the grantees "agreed to comply with an array of requirements" set by the terms of the agreement, consideration is satisfied. *See id.* ("The conditions attached to the [federal] grants constitute consideration because they imposed a variety of duties on [the grantee] in implementing the [grant] agreement."). Lastly, Defendants agree that actual authority is satisfied here, which is sufficient to establish that element. *See id.* Thus, the grant agreements at issue here "set the terms of and receive commitments from recipients" of federal grant programs. *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021). That places them within the jurisdiction of the Court of Federal Claims.

*Second*, the contracts are enforceable with money damages. "Normally contracts do not contain provisions specifying the basis for the award of damages." *San Juan City Coll. v. United States*, 391 F.3d 1357, 1361 (Fed. Cir. 2004). But "in the area of government contracts, as with private agreements, there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement." *Sanders v. United States*, 252 F.3d 1329, 1334 (Fed. Cir. 2001). That Plaintiffs' contracts are "government financial grants does not warrant a different standard." *San Juan City Coll.*, 391 F.3d at 1361. As a result, if there is a breach, "the presumption [is] that damages are available upon the breach" of these grant agreements. *Boaz Hous. Auth.*, 994 F.3d at 1365. This is true even if the statutory scheme authorizing the grants does not expressly contemplate money damages in a subsequent suit.

*Third*, Plaintiffs' claims challenging the grant terminations ultimately seek monetary reward specified in the contracts. Plaintiffs seek "an injunction undoing the termination or abandonment" of the

grant awards.  Pls.' Compl., Prayer for Relief ¶ 1(c) (Counts I and IV); *id.* ¶ 2(c)–(d) (Counts II and III); *id.* ¶ (Counts V and VI).  Whether styled as seeking declaratory, injunctive, or some other form of relief, the claims, "in essence . . . seek[] to obtain the financial benefit of a prior contract-based obligation that allegedly has not been honored by the Government." *See Suburban Mortg. Assocs.*, 480 F.3d at 1126.  Since, "a money judgment will give [P]laintiff[s] essentially the remedy [they] seek[]," this case does not belong in district court. *See id.*

In sum, jurisdiction over Plaintiffs' claims properly lies in the Court of Federal Claims.  And, accordingly, those claims should be transferred pursuant to 28 U.S.C. § 1691.  In the alternative, should the Court decline to transfer, they should be dismissed.

## II.  The Court Should Dismiss the Remaining Severed Claims.

There is no jurisdiction—in this court or any federal court—over Plaintiffs' remaining claims. Plaintiffs have not established Article III standing to challenge the DOE Memo.  Nor is the DOE Memo final agency action.

### A.  Plaintiffs Lack Standing to Challenge the DOE Memo.

Plaintiffs have not established Article III standing to challenge the DOE Memo.  To establish standing, Plaintiffs must demonstrate (1) that they suffered an injury in fact; (2) caused by the allegedly unlawful action; and (3) redressable by the Court. *United States v. Texas*, 599 U.S. 670, 676 (2023). And Plaintiffs "must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted).

Here, the most obvious problem lies with redressability.  In order for Plaintiffs to establish standing to vacate and enjoin the DOE Memo, the relief they seek must redress the injuries they allege. *See Regents of Univ. of California v. Shalala*, 82 F.3d 291, 298 (9th Cir. 1996) (holding that a plaintiff lacked standing because a favorable ruling would not redress the injury alleged); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek.").  In light of the jurisdictional limits described above, which foreclose relief for grant terminations in district court, there is a mismatch between the injuries alleged in the complaint and the relief sought.  The alleged harms enumerated in the complaint consist of

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

a list of the terminated grants. *See* Pls.' Compl. ¶¶ 100–201. Jurisdiction to grant relief for those terminations is committed to the Court of Federal Claims. *See NIH*, 145 S. Ct. at 2659 (holding that district courts lack jurisdiction to enter injunctive "relief designed to enforce any 'obligation to pay money' pursuant to those grants") (quoting *California*, 604 U.S. at 651). Accordingly, a favorable ruling for Plaintiffs on the DOE Memo cannot redress the termination-based injuries alleged. *See Shalala*, 82 F.3d at 298 (holding that a plaintiff lacked standing because a favorable ruling would not redress the injury alleged). For that reason, Plaintiffs lack standing as to those claims challenging the DOE memo. *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established.").

Plaintiffs do also seek prospective injunctive relief for Counts I and IV, in that they seek to vacate and enjoin the use of the DOE Memo for any future review of grants. *See* Pls.' Compl. ¶ 1(b). However, Plaintiffs have not established standing to seek such prospective relief. To do so, Plaintiffs must show that it is likely—rather than merely possible or speculative—that they will suffer imminent future injury from the DOE Memo. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (plaintiff must "demonstrate that irreparable harm is likely in the absence of an injunction"); *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("[T]he injury must be both certain and great; it must be actual and not theoretical" and not "merely feared as liable to occur at some indefinite time[.]"). The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that 'allegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USD,* 568 U.S. 398, 409 (2013) (citation modified). Another court recently denied such a claim for prospective relief with respect to the October 2025 DOE grant terminations. In *City of Saint Paul v. Wright*, the court found that the plaintiffs lacked standing to seek prospective relief. *See* No. 25-cv-03899 (APM), 2026 WL 913112, at *3 (D.D.C. Apr. 3, 2026). The court reached that conclusion notwithstanding the fact that DOE review of financial awards remained (and remains) ongoing, explaining that the plaintiffs had not shown that additional awards were likely to be terminated for the reasons complained of. *Id.* Here, Plaintiffs have not alleged facts demonstrating that such terminations are likely or imminent. They do not allege that any future terminations are imminent, nor have they

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

12

identified other agreements that may be terminated pursuant to the DOE Memo. Accordingly, they have not established any imminent likelihood of future injury caused by the allegedly unlawful DOE Memo.

### B. The DOE Memo is Not Final Agency Action.

This court also lacks jurisdiction over the DOE Memo, itself, as the Memo is not final agency action. As a general matter, district courts lack subject matter jurisdiction over agency actions that are "not 'final' within the meaning of the APA[.]" *See Zhou v. Lyons*, 813 F. Supp. 3d 1052, 1059 (C.D. Cal. 2025) (citing *Rattlesnake Coalition v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007)). Under the APA, plaintiffs must challenge "some particular 'agency action' that causes [them] harm." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). And that agency action must be "circumscribed" and "discrete[.]" *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 62 (2004). The APA does not invite plaintiffs to "seek *wholesale* improvement" of agency management "by court decree"—even in the face of allegations of "rampant" violations of law. *Lujan*, 497 U.S. at 891. Rather, "'an on-going program or policy is not, in itself, a final agency action under the APA[.]'" *Cobell v. Norton*, 240 F.3d 1081 1095 (D.C. Cir. 2001). And given that Article III does not permit judicial resolution of generalized grievances, "jurisdiction does not extend to reviewing generalized complaints about agency behavior." *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (citation omitted).

Two requirements must be met for an agency action to be final within the meaning of the APA. First, the challenged action "must mark the 'consummation' of the agency's decision-making process— it must not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). Second, the challenged "action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* Neither applies to the DOE Memo.

Under the first prong, the announcement of a policy typically indicates the initiation—not the conclusion—of the agency's decision-making process. An "'on-going policy is not, in itself, a final agency action under the APA," and "jurisdiction does not extend to reviewing generalized complaints about agency behavior." *Kempthorne*, 455 F.3d at 307 (quoting *Norton*, 240 F.3d at 1095). Further, "interpretive rules or statements of policy," like the DOE Memo, "generally do not qualify because they

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

are not "finally determinative of the issues or rights to which they are addressed." *Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*, 738 F.3d 387, 395 (D.C. Cir. 2013) (citation omitted). As for the second prong, rights and obligations are not determined by the force of the DOE Memo itself; it does not itself determine rights or obligations or have any legal consequence. On its face, it only requires an ongoing review. Although legal consequences flowed from the eventual terminations of certain grants, those terminations are beyond the scope of APA review and cannot constitute final action for that purpose. Indeed, Justice Barrett suggested that a policy memo *directing* terminations may not be final action, even after the terminations were effectuated. *NIH*, 145 S. Ct. at 2662 (Barrett, J., concurring). Ultimately, while an action the agency actually *takes* based on that review might itself be final agency action (but for the Tucker Act), the review process itself—which is, at most, what the Memo sets in place—is not final agency action.

### C.  The Ultra Vires Claim Should Be Dismissed for Want of Jurisdiction.

There is no jurisdiction over Plaintiffs' "ultra vires" claim. "Suits against the government are barred for lack of subject matter jurisdiction unless the government expressly and unequivocally waives its sovereign immunity." *E. V. v. Robinson*, 906 F.3d 1082, 1090 (9th Cir. 2018) (citation omitted). As discussed, the APA narrowly waives sovereign immunity in certain circumstances. The ultra vires doctrine bypasses this bar only when the claims effectively "are not 'against the government.'" *Id.* (citation omitted). The Ninth Circuit has specifically recognized that in the context of "breach of contract" ultra vires cannot succeed because "the relief sought in a suit nominally addressed to the officer is relief against the sovereign." *Id.* (quoting *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 684–87 (1949)). And because the claims are effectively for breach of contract, *see supra* part (I)(B), that bar applies here. *See Larson*, 337 U.S. at 688 (dismissing due to sovereign immunity because the suit was "in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction").

Ultra vires claims cannot bypass the jurisdictional limits of the Tucker Act. *See Armstrong*, 575 U.S. at 324–27; *see also Sustainability Inst.*, 2025 WL 1587100, at *2 ("[I]t appears unlikely that Plaintiffs' ultra vires claims, which allege the Government violated the Constitution when it terminated

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

14

or suspended Plaintiffs' grants, would provide a detour around the Tucker Act").  Because the Tucker Act shows "meaningful and adequate opportunity for judicial review," or "clear and convincing evidence that Congress intended to deny . . . District Court jurisdiction," ultra vires review is foreclosed. *See Bd. of Govs. of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43–44 (1991).

In addition, ultra vires claims amount to "a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nuclear Regulatory Comm'n v. Texas*, 605 U.S. 665, 681–82 (2025). Accordingly, ultra vires review outside the APA is extremely limited.  Plaintiffs cannot bypass the limits of the APA by "dress[ing] up a typical statutory-authority argument as an ultra vires claim." *Id.* at 682.

As relevant here, the Supreme Court has expressly rejected the contention that acting beyond statutory authority amounts to a constitutional violation of the separation of powers.  In *Dalton v. Specter*, which involved a similar ultra vires claim, the Supreme Court reversed the appellate court's holding that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine."  511 U.S. 462, 471 (1994).  In so doing, the Court affirmed long-standing precedent that "[not] every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. "[C]laims simply alleging that the President [or an executive officer] has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review." *Id.* at 473.  They are simply statutory claims, not constitutional ones.  And because Plaintiffs' challenge merely alleges that Defendants made the wrong decisions within otherwise lawful statutory grant programs and regulatory termination clauses, ultra vires cannot succeed.  *See E. V.*, 906 F.3d at 1097 (explaining officers have "discretionary authority to make incorrect as well as correct decisions" (cleaned up)); *United States v. Yakima Tribal Ct.*, 806 F.2d 853, 860 (9th Cir. 1986) ("[T]here is no per se divestiture of sovereign immunity when statutes or regulations are violated while an agent is pursuing his authorized duties.").

## CONCLUSION

For the reasons stated above, Defendants respectfully request to transfer Plaintiffs' claims challenging the grant terminations pursuant to 28 U.S.C. § 1631 or, in the alternative, to dismiss those claims.  In addition, Defendants respectfully request that the Court dismiss the remainder of the claims.

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

DATED: April 27, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director


*/s/ Elizabeth B. Layendecker*____

ELIZABETH B. LAYENDECKER
(Cal Bar No. 357429)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 616-5046
Email: Elizabeth.b.layendecker@usdoj.gov

*Attorneys for Defendants*

FED. DEFS' MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

16