ROB BONTA
Attorney General of California
TODD GRABARSKY
R. MATTHEW WISE
Supervising Deputy Attorneys General
RYAN EASON
KRISTI HUGHES
HARALD H. KIRN
CHRISTOPHER J. KISSEL
Deputy Attorneys General
State Bar No. 333937
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013-1230
 Telephone:  (213) 269-6388
 E-mail:  Christopher.Kissel@doj.ca.gov

*Attorneys for Plaintiffs State of California and California Governor's Office of Business and Economic Development*

*Additional Counsel Listed on Signature Page*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF WASHINGTON; STATE OF CONNECTICUT; STATE OF ILLINOIS; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF NEW JERSEY; STATE OF NEW YORK; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; STATE OF WISCONSIN; CALIFORNIA GOVERNOR'S OFFICE OF BUSINESS AND ECONOMIC DEVELOPMENT,** derivatively on behalf of **ARCHES H2 LLC;**<br><br>Plaintiffs,<br><br>**v.**<br><br>**CHRISTOPHER WRIGHT**, in his official capacity as Secretary of Energy; **U.S. DEPARTMENT OF ENERGY; RUSSELL T. VOUGHT**, in his official capacity as | Case No. 3:26-CV-01417-RFL<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND TO TRANSFER**<br><br>Date:         None set<br>Time:         None set<br>Courtroom:  Courtroom 15 - 18th Floor<br>Judge:        The Honorable Rita F. Lin<br>Trial Date:   None set<br>Action Filed: February 18, 2026 |

Director of the U.S. Office of Management and Budget; **U.S. OFFICE OF MANAGEMENT AND BUDGET,**

Defendants.

**TABLE OF CONTENTS**

**Page**

Introduction ................................................................................................................ 1

Background .................................................................................................................. 1

Legal Standards ........................................................................................................... 4

Argument ..................................................................................................................... 5

      I.     This Court Has Jurisdiction Over Plaintiffs' Constitutional Claims ....................... 5

      II.    This Court Has Jurisdiction Over Plaintiffs' APA Claims ................................... 7

           A.    The Tucker Act does not "impliedly forbid" the relief Plaintiffs seek ................................................................................................................. 8

               1.     Plaintiffs' claims raise statutory and constitutional rights ............. 8

               2.     Plaintiffs do not seek contractual remedies ................................. 10

           B.    Plaintiffs do not seek money damages and the CFC lacks authority to grant adequate relief .............................................................................. 11

      III.   Defendants' Remaining Arguments Fail ................................................................. 12

           A.    DOE's adoption of its review process was a final agency action ............. 12

           B.    Plaintiffs have standing to seek equitable relief ....................................... 13

Conclusion .................................................................................................................. 15

i

**TABLE OF AUTHORITIES**

**Page**

CASES

*Am. Ass'n of Univ. Professors v. Trump*
815 F. Supp. 3d 907 (N.D. Cal. 2025) ................................................................... 6, 13

*American Tort Reform Association v. OSHA*
738 F.3d 387 (D.C. Cir. 2013) ................................................................................ 13

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................................................. 5

*Ass'n of Am. Universities v. Dep't of Def.*
806 F. Supp. 3d 79 (D. Mass. 2025) ....................................................................... 14

*Bennett v. Spear*
520 U.S. 154 (1997) ............................................................................................. 12, 13

*Boaz Hous. Auth. v. United States*
994 F.3d 1359 (Fed. Cir. 2021) ............................................................................... 6

*Bowen v. Massachusetts*
487 U.S. 879 (1988) ................................................................................................. 6

*Brandt v. United States*
710 F.3d 1369 (Fed. Cir. 2013) ............................................................................... 7

*Christianson v. Colt Indus. Operating Corp.*
486 U.S. 800 (1988) ................................................................................................. 12

*Cmty. Legal Servs. in E. Palo Alto v. Dep't of Health & Hum. Servs.*
137 F.4th 932 (9th Cir. 2025) ............................................................................... 9, 12

*Cmty. Legal Servs. in E. Palo Alto v. Dep't of Health & Hum. Servs.*
155 F.4th 1099 (9th Cir. 2025) ............................................................................. 8, 11

*Cobell v. Kempthorne*
455 F.3d 301 (D.C. Cir. 2006) ................................................................................ 13

*Cummins v. United States*
171 Fed. Cl. 527 (Fed. Cir. 2024) ........................................................................... 6

*Dalton v. Specter*
511 U.S. 462 (1996) ............................................................................................... 6, 7

*Dep't of Educ. v. California*
604 U.S. 650 (2025) ....................................................................................... 10, 11, 15

**TABLE OF AUTHORITIES**
(continued)

Page

*Fleck & Assoc., Inc. v. City of Phoenix*
471 F.3d 1100 (9th Cir. 2006)......................................................................................... 15

*Illinois v. FEMA*
801 F. Supp. 3d 75 (D.R.I. 2025)................................................................................... 15

*Jaye v. United States*
781 F. App'x 994 (Fed. Cir. 2019) ................................................................................... 6

*Kendall v. U.S. ex rel. Stokes*
37 U.S. 524 (1838)............................................................................................................ 6

*Megapulse, Inc. v. Lewis*
672 F.2d 959 (D.C. Cir. 1982) .............................................................................. 8, 10, 11

*Metzinger v. Dep't of Veterans Aff's*
20 F.4th 778 (Fed. Cir. 2021)....................................................................................... 7, 12

*Murphy Company v. Biden*
65 F.4th 1122 (9th Cir. 2023)........................................................................................... 7

*Nat'l Council of Nonprofits v. OMB*
775 F. Supp. 3d 100 (D.D.C. 2025) ............................................................................... 13

*New York v. Trump*
171 F.4th 1 (1st Cir. 2026).................................................................................... 2, 6, 15

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*
465 F.3d 977 (9th Cir. 2006).......................................................................................... 12

*Pacito v. Trump*
169 F.4th 895 (9th Cir. 2026).............................................................................. 9, 10, 11

*Planned Parenthood of Greater Wash. v. Dep't of Health and Human Servs.*
946 F.3d 1100 (9th Cir. 2020)........................................................................................ 14

*Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*
75 F.3d 1568 (Fed. Cir. 1996)......................................................................................... 4

*Regents of Univ. of Cal. v. Shalala*
82 F.3d 291 (9th Cir. 1996)............................................................................................ 14

*Safe Air for Everyone v. Meyer*
373 F.3d 1035 (9th Cir. 2004)..................................................................................... 4, 15

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*San Francisco A.I.D.S. Found. v. Trump*
786 F. Supp. 3d 1184 (N.D. Cal. Jun. 9, 2025).........................................................................5

*San Francisco Herring Ass'n v. Dep't of the Interior*
946 F.3d 564 (9th Cir. 2019)................................................................................ 15

*San Francisco Unified Sch. Dist. v. AmeriCorps*
784 F. Supp. 3d 1280 (N.D. Cal. 2025) ..............................................................6

*San Francisco Unified Sch. Distr. v. AmeriCorps*
789 F. Supp. 3d 716 (N.D. Cal. 2025) ..............................................................13

*Sea-Land Service, Inc. v. Alaska R.R.*
659 F.2d 243 (D.C. Cir. 1981) ..............................................................6

*Sierra Club v. Trump*
929 F.3d 670 (9th Cir. 2019).............................................................. 5, 6, 7

*Thakur v. Trump*
163 F.4th 1198 (9th Cir. 2025)........................................................... 6, 13

*Tucson Airport Auth. v. Gen. Dynamics Corp.*
136 F.3d 641 (9th Cir. 1998)............................................................. 8

*Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*
338 F.3d 1353 (Fed. Cir. 2003)......................................................... 5

*United Aeronautical Corp. v. U.S. Air Force*
80 F.4th 1017 (9th Cir. 2023)........................................................... 8

*United States v. Cnty. of Cook*
170 F.3d 1084 (Fed. Cir. 1999).......................................................... 7

*United States v. Connolly*
716 F.2d 882 (Fed. Cir. 1983)............................................................ 6

*United States v. Tohono O'Odham Nation*
563 U.S. 307 (2011) .................................................................... 7, 11

*Washington v. U.S. Dep't of Educ.*
161 F.4th 1136 (9th Cir. 2025)......................................................... 11, 15

*Whitman v. Am. Trucking Ass'ns*
531 U.S. 457 (2001) ........................................................................ 12

iv

**TABLE OF AUTHORITIES**
(continued)

Page

*Woonasquatucket River Watershed Council v. USDA*
    778 F.Supp.3d 440 (D.R.I. 2025)................................................................................ 3

*Yagman v. Pompeo*
    868 F.3d 1075 (9th Cir. 2017)................................................................................... 4

**STATUTES**

5 United States Code
    § 551(13) ................................................................................................................. 12
    § 702........................................................................................................................ 5, 6, 8

28 United States Code
    § 1292(d)(4)(A)........................................................................................................ 4
    § 1346(a)(2)............................................................................................................. 8
    § 1491...................................................................................................................... 6
    § 1491(a)(1)............................................................................................................. 8
    § 1500...................................................................................................................... 7
    § 1631...................................................................................................................... 4, 12

42 United States Code
    § 6838(b) ................................................................................................................. 2
    § 16161(a) ............................................................................................................... 2
    § 16293.................................................................................................................... 2

v

**INTRODUCTION**

Plaintiffs challenge the adoption of a policy by Defendants—the U.S. Department of Energy ("DOE"); Secretary of Energy Chris Wright; the U.S. Office of Management and Budget ("OMB"); and OMB Director Russ Vought—to review all DOE funding and eliminate energy programs created and funded by Congress. That action violates the fundamental separation of powers in the Constitution, the various statutes that authorized and appropriated funds for those programs, and the procedural protections of the Administrative Procedure Act ("APA"). And because those violations are a matter of federal agency policy, Plaintiffs' claims belong here, not in the Court of Federal Claims ("CFC").

Defendants concede as much. They concede that this Court has the inherent jurisdiction to consider claims, like Plaintiffs' separation-of-powers claim, that invoke the Court's power to halt unconstitutional federal actions. They also concede that challenges to the lawfulness of federal agency policies, like Plaintiffs' separation-of-powers and APA claims, belong in this Court. Defendants cannot avoid those concessions. As Justice Barrett explained in her controlling concurrence in *National Institutes of Health v. American Public Health Association*, "the District Court is the right forum for the challenge to" federal agency policies, even when they concern the termination of financial awards. 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring).

Those basic realities doom Defendants' motion. This Court, not the CFC, has the power to consider Plaintiffs' claims. It has the fundamental power to consider Plaintiffs' core allegation that Defendants transgressed the separation of powers by seeking to undo congressional actions. It also has the power to consider claims that challenge the adoption of an unlawful agency policy. Defendants' arguments that the Court should transfer Plaintiffs' claims to the CFC or dismiss them for lack of jurisdiction therefore fail. Defendants' alternative arguments fail, too, because Plaintiffs' claims challenge a clear final agency action and this Court can redress the harms Plaintiffs have suffered because of that action. The Court should deny Defendants' motion.

**BACKGROUND**

On day one of his second term, President Trump issued an executive order titled "Unleashing American Energy" that set out a plan to "terminate" historic energy and

1

infrastructure laws passed by Congress in the preceding years. Complaint ("Compl.") (ECF 1) ¶ 1. The order directed all federal agencies to "immediately pause the disbursement of funds appropriated through the Inflation Reduction Act of 2022 (Public Law 117–169) ('IRA') or the Infrastructure Investment and Jobs Act (Public Law 117–58) ('IIJA')." Exec. Ord. No. 14154, 90 Fed. Reg. 8353, 8357 (Jan. 20, 2025). It also required agencies to "review their processes, policies, and programs for issuing grants, loans, contracts, or any other financial disbursements of such appropriated funds[.]" *Id.*

The order aimed to undo a suite of legislative enactments the President called "the Green New Deal." Through the IRA and IIJA, Congress created numerous ambitious programs and appropriated large sums to support them. Compl. ¶¶ 37–49. The programs include the $8 billion Regional Clean Hydrogen Hubs program (42 U.S.C. § 16161a), the $2.5 billion Carbon Storage Validation and Testing program (§ 16293), and the $225 million Resilient and Efficient Codes Implementation program (§ 6838(b)), among many others. Compl. ¶¶ 42(b), (c); 44(a). Congress also created a new office within DOE, the Office of Clean Energy Demonstrations, funded with $21.5 billion to administer projects including, for example, the hydrogen hubs. *Id.* ¶ 44.

Based on the Unleashing American Energy order and others, OMB directed agencies "to identify and review all Federal financial assistance programs and supporting activities" and "temporarily pause all activities related to obligation or disbursement of all Federal financial assistance" "to programs, projects, and activities implicated" by the orders. *New York v. Trump*, 171 F.4th 1, 9–10 (1st Cir. 2026) (quoting in part *Guidance Regarding Section 7 of the Executive Order Unleashing American Energy*, OMB Memo M-25-11 (Jan. 21, 2025)).

Courts soon enjoined the Administration's actions. Compl. ¶ 53. In early March, a district court enjoined OMB and DOE "from reissuing, adopting, implementing, giving effect to, or reinstating under a different name" OMB's pause of DOE funding. *New York*, 171 F.4th at 14. A month later, another court ordered DOE to "take immediate steps to resume the processing, disbursement, and payment of already-awarded funding appropriated under the Inflation Reduction Act or the Infrastructure Investment and Jobs Act, and to release awarded funds previously withheld or rendered inaccessible." *Woonasquatucket River Watershed Council v.*

2

*USDA*, 778 F.Supp.3d 440, 479 (D.R.I. 2025), *appeal argued*, 25-1428 (1st Cir. Feb. 5, 2026). Neither injunction was stayed; both are in effect as of this writing.

Yet DOE continued to work to undo its own funding and eliminate its own programs. By late March 2025, it had compiled a "kill list" of at least $22 billion in cuts. Compl. ¶ 54. A spokesperson confirmed DOE was reviewing its funding "to ensure activities follow the law and align with the Trump administration's priorities." *Id.* In early May, DOE put forward a budget proposal called "Ending the Green New Scam" that asked Congress to rescind roughly $19 billion in funding. *Id.* ¶ 56.

With its review well underway—and seemingly in response to the earlier injunctions—DOE issued a memorandum on May 15, 2025, announcing its "Secretarial Policy on Ensuring Responsibility in Financial Assistance" ("the DOE Memo"). *Id.* ¶ 58. The DOE Memo stated that DOE would review awards to determine whether they were, among other things, "aligned with national interests" and "consistent with the Administration's policies and priorities." *Id.* ¶ 59. If DOE determined a project did not meet such "Standards," DOE "in its discretion, may terminate the project[.]" *Id.* Two weeks later, DOE terminated 24 projects, totaling $3.7 billion, all administered by the Office of Clean Energy Demonstrations. *Id.* ¶ 61.

Then, in October, Director Vought announced that DOE would cut "[n]early $8 billion in the Green New Scam funding to fuel the Left's climate agenda." *Id.* ¶ 72. The next day, DOE terminated 315 awards collectively worth $7.56 billion. *Id.* ¶ 73. Awards to Plaintiffs accounted for a significant portion, including over $2 billion for Regional Clean Hydrogen Hubs, *id.* ¶ 84(a); over $41.5 million for Carbon Storage Validation and Testing, *id.* ¶ 84(d); and nearly $16 million for Resilient and Efficient Codes Implementation, *id.* ¶ 84(c). What is more, millions—perhaps billions—in funding awarded to Plaintiffs is inaccessible, and while these awards are not subject to formal termination, they have effectively been abandoned. *Id.* ¶¶ 82–83.

DOE has not repurposed this funding for other authorized projects. *Id.* ¶ 61. Indeed, as of the time the Complaint was filed, DOE continued to sit on billions of dollars appropriated via the IIJA while OMB withheld funding for the Office of Clean Energy Demonstrations. *Id.* ¶¶ 64, 66. Defendants concede that DOE's review "remains[] ongoing." Motion ("Mot.") (ECF 68) p. 12.

3

Plaintiffs are thirteen States—plus the California Governor's Office of Business and Economic Development—whose financial awards were terminated or de-facto suspended by Defendants in October 2025. Plaintiffs filed this case in February 2026. The Complaint contains six counts. Count I arises under the Constitution and alleges that Defendants violated the separation of powers by engaging in acts deliberately designed to undermine Congress's direction to create and fund certain programs. Counts II and III arise under the APA and allege, respectively, that Defendants' actions were contrary to appropriation and authorization statutes and the Constitution and that the DOE Memo was arbitrary and capricious. Count IV challenges Defendants' usurpation of congressional authority under the Court's equitable powers. Finally, Counts V and VI, raised by one of the Plaintiffs only, challenges the terminations directly as violations of the Due Process Clause and the First Amendment. Plaintiffs ask this Court to vacate the DOE Memo and the policy it memorialized; enjoin Defendants from continuing to implement that policy; and, to the extent such relief is not jurisdictionally precluded, restore their awards.

**LEGAL STANDARDS**

Transfer is appropriate only if (1) "there is a want of jurisdiction" in the origin court; (2) the action "could have been brought" in the transferee court "at the time it was filed"; and (3) transfer is "in the interest of justice." 28 U.S.C. § 1631. A motion to transfer is a challenge to the Court's subject-matter jurisdiction. *Id.* A facial jurisdictional attack, as here, is based solely on the face of the Complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Although appeal from a ruling on a motion to transfer lies in the Federal Circuit, 28 U.S.C. § 1292(d)(4)(A), the law of the Ninth Circuit applies to the jurisdictional issues raised here. As the Federal Circuit itself has explained, "[w]hen considering issues which are not unique to our jurisdiction we defer to the law of the regional circuit." *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1574 (Fed. Cir. 1996). The central issue here—whether this Court's equitable and APA jurisdiction is precluded by the Tucker Act—is not unique to the Federal Circuit. *See, e.g.*, *Yagman v. Pompeo*, 868 F.3d 1075, 1078 (9th Cir. 2017) (reviewing district court's determination that it lacked subject-matter jurisdiction). However, the Federal Circuit applies its own law "to issues concerning [its own] jurisdiction." *Ultra-Precision Mfg. Ltd. v.*

4

*Ford Motor Co.*, 338 F.3d 1353, 1357 (Fed. Cir. 2003).

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

<strong>ARGUMENT</strong>

**I.    THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CONSTITUTIONAL CLAIMS**

Plaintiffs' constitutional claims are within this Court's fundamental equitable jurisdiction. Defendants' arguments to the contrary largely depend on the argument that those claims "necessarily rely on" section 702 of the APA to waive sovereign immunity. Mot. p. 4. But Plaintiffs' constitutional separation-of-powers and ultra-vires claims rely on this Court's core equitable power to constrain unconstitutional acts by federal officials, not the waiver in section 702. Neither the APA nor the Tucker Act supersede that jurisdiction. And, as explained below, the Court's jurisdiction over Plaintiffs' constitutional claims also means that this Court cannot transfer any of Plaintiffs' claims to the CFC.

Plaintiffs' constitutional claims are squarely in this Court's equitable jurisdiction. Those claims call upon the Court's jurisdiction to enjoin "federal officials violating federal law." *Sierra Club v. Trump*, 929 F.3d 670, 694 (9th Cir. 2019). This jurisdiction is not created or limited by statute. Instead, "[t]he ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Id.* (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015)). It is a power that long predates the APA and has been consistently exercised after the APA's enactment. *Id.* It specifically includes, as relevant here, the power to enjoin violations of the separation of powers, First Amendment, and equal protection. *See Sierra Club*, 929 F.3d 670 (determining whether executive actions violated the Appropriations Clause); *see also Youngstown*, 343 U.S. 579; *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184 (N.D. Cal. Jun. 9, 2025) (First Amendment and equal protection).

Defendants argue that this Court's jurisdiction over these claims depends on the waiver of sovereign immunity contained in section 702 of the APA. Mot. p. 4. But Plaintiffs do not invoke

5

the APA as the basis of the Court's jurisdiction for these claims. Compl. at ¶ 210, 241–50. Nor does the APA or Tucker Act limit this Court's jurisdiction to hear Plaintiffs' constitutional claims. *See* Mot. pp. 14–15. *See* Mot. pp. 14–15. Though Congress may limit the Court's equitable jurisdiction, there must be "clear and convincing evidence" of its intent to do so. *Sierra Club*, 929 F.3d at 697–98. Neither of the statutes Defendants rely on—the APA and Tucker Act—indicates such an intent. For its part, the APA's waiver of sovereign immunity in section 702 was intended to create *new* avenues for suit; it has no application where avenues already exist. *Sea-Land Service, Inc. v. Alaska R.R.*, 659 F.2d 243, 244 (D.C. Cir. 1981) (citing S. Rep. 94-996; H.R. Rep. 94-1656). And the Tucker Act does not limit that jurisdiction, either, because its jurisdiction only applies to actions seeking "liquidated or unliquidated damages." 28 U.S.C. § 1491. It does not give the CFC "the general equitable powers of a district court to grant prospective relief," *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988), nor the power to consider constitutional claims unless they are based on a "money-mandating" law, *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1364 (Fed. Cir. 2021).[1] Plaintiffs' claims do not rely on "money-mandating" law. *Jaye v. United States*, 781 F. App'x 994, 997–98 (Fed. Cir. 2019) (separation of powers not money-mandating); *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983) (First Amendment); *Cummins v. United States*, 171 Fed. Cl. 527, 533 (Fed. Cir. 2024) (equal protection). District courts have long heard claims like those here. *See, e.g.*, *Kendall v. U.S. ex rel. Stokes*, 37 U.S. 524, 610 (1838); *Youngstown*, 343 U.S. at 584–85; *Thakur v. Trump*, 163 F.4th 1198, 1204–07 (9th Cir. 2025); *Am. Ass'n of Univ. Professors v. Trump*, 815 F. Supp. 3d 907 (N.D. Cal. 2025).

Defendants alternatively rely on *Dalton v. Specter*, 511 U.S. 462 (1996), to argue that Plaintiffs' ultra-vires claim—and, by implication, their separation-of-powers claim—fail because "acting beyond statutory authority" does not amount to "a constitutional violation of the separation of powers." Mot. p. 15. In *Dalton*, the Supreme Court held that an action by a federal official that exceeds the official's statutory authority does not *necessarily* violate the separation of

---

[1] The standard example of a money-mandating legal provision is the Takings Clause. *See San Francisco Unified Sch. Dist. v. AmeriCorps,* 784 F. Supp. 3d 1280, 1294 (N.D. Cal. 2025).

powers. *Dalton*, 511 U.S. at 472. But the Ninth Circuit later rejected the expansive interpretation of *Dalton* that Defendants advance here. *Sierra Club*, 929 F.3d at 696. "The Court did not say that action in excess of statutory authority can *never* violate the Constitution or give rise to a constitutional claim," the Ninth Circuit explained. *Id.* Rather, *Dalton* involved the "simpl[e]" allegation that "the President has exceeded his statutory authority." *Id*. But in *Sierra Club*, as here, plaintiffs alleged that defendants lacked any statutory *or* constitutional authority to take the challenged action—"making Plaintiffs' claim fundamentally a constitutional one" rather than a simple statutory violation. *Id.* at 696–97; *Murphy Company v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023); Compl. ¶¶ 86–98. Moreover, the fact that unconstitutional actions also give rise to statutory claims under the APA presents no problem: "Statutory and constitutional claims are not mutually exclusive." *Sierra Club*, 929 F.3d at 696. *Dalton* does not foreclose Plaintiffs' claims.

Accordingly, this Court has jurisdiction over Plaintiffs' constitutional claims. Because it does, it cannot transfer any part of this case. *See United States v. Cnty. of Cook*, 170 F.3d 1084, 1086–87 (Fed. Cir. 1999). Under 28 U.S.C. § 1500, the CFC lacks jurisdiction over "any claim for or in respect to which" another suit is "pending." *Brandt v. United States*, 710 F.3d 1369, 1379 n.7 (Fed. Cir. 2013); *see also NIH*, 145 S. Ct. at 2662 (Barrett, J., concurring). In the context of section 1500, two suits concern the same claim "if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011). Defendants concede that Plaintiffs' constitutional claims, and their other claims to the extent they challenge DOE Memo, cannot be transferred. Mot. p. 15. They are correct. "[A] proper transfer requires both that the transferor court lack jurisdiction and that the transferee court have it." *Metzinger v. Dep't of Veterans Aff's*, 20 F.4th 778, 780–81 (Fed. Cir. 2021). That is fatal to Defendants' transfer motion because Plaintiffs' claims all arise from the same operative facts—Defendants' efforts to "terminate the Green New Deal" and conduct a sweeping funding review. *Tohono O'Odham*, 563 U.S. at 317. Because this Court is the proper venue for Plaintiffs' constitutional claims, no claims can be transferred.

## II.   THIS COURT HAS JURISDICTION OVER PLAINTIFFS' APA CLAIMS

Section 702 of the APA specifically waives the federal government's sovereign immunity

7

against any action in federal court that seeks relief other than money damages, so long as an adequate remedy is not available elsewhere and no other statute "expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702; *see Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998). The Tucker Act confers exclusive jurisdiction to the CFC over "any claim against the United States founded . . . upon any express or implied contract with the United States" exceeding ten thousand dollars. 28 U.S.C. §§ 1491(a)(1), 1346(a)(2). Accordingly, district courts have jurisdiction over claims properly brought under the APA, including those concerning agency policy related to federal awards, while the CFC has jurisdiction over contract claims against the federal government. *See NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring). Plaintiffs' APA claims are squarely in the former category and thus belong here, not in the CFC.

**A.    The Tucker Act does not "impliedly forbid" the relief Plaintiffs seek**

The Tucker Act "impliedly forbid[s]" the district court from exercising jurisdiction over an APA claim only if that claim is a "'disguised' breach-of-contract claim." 28 U.S.C. § 1491(a)(1); *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). To determine whether the Tucker Act impliedly forbids an APA claim, courts apply the "*Megapulse* test," which looks to "(1) 'the source of the rights upon which the plaintiff bases its claims' and (2) 'the type of relief sought.'" *Id*. Though the *Megapulse* test continues to govern in the Ninth Circuit, *Cmty. Legal Servs. in E. Palo Alto v. Dep't of Health & Hum. Servs.*, 155 F.4th 1099, 1102 (9th Cir. 2025), Defendants ignore it. Under *Megapulse*, the sources of rights Plaintiffs seek to vindicate are statutory and constitutional, not contractual, and Plaintiffs seek traditional equitable relief, not contract remedies. Plaintiffs' APA claims therefore are not "disguised" breach-of-contract claims and they belong in this Court.

**1.    Plaintiffs' claims raise statutory and constitutional rights**

As to the first *Megapulse* prong, the sources of Plaintiffs' rights are the statutory and constitutional provisions that prohibit Defendants' actions. Plaintiffs have not raised claims based on any contract. "If rights and remedies are *statutorily* or *constitutionally* based, then district courts have jurisdiction; if rights and remedies are *contractually* based then only the [CFC]

8

does[.]" *Cmty. Legal Servs.*, 137 F.4th at 938 (emphasis in original) (quoting *United Aeronautical Corp.*, 80 F.4th at 1026). Here, Plaintiffs allege that Defendants' adoption of the DOE Memo, which memorialized an agency-wide policy to eliminate programs and freeze, review, and terminate funding, was "contrary to constitutional right and power," "in excess of statutory authority," and "arbitrary and capricious." *See* Compl. ¶¶ 218–36. Because Plaintiffs seek to enforce compliance with statutes and the Constitution, not government contracts, Plaintiffs' claims are "beyond the scope of the Tucker Act's exclusive jurisdiction." *Cmty. Legal Servs.*, 137 F.4th at 938.

Rather than engage with the substance of Plaintiffs' claims, Defendants write into the Complaint APA claims that Plaintiffs do not allege. Plaintiffs' APA claims challenge only Defendants' unlawful policy, not "agency terminations of [] contractual agreements." Mot. p. 1. The fact that the DOE Memo "discusses internal policies related to grants does not transform [Plaintiffs'] challenge . . . into a claim 'founded . . . upon' contract that only the CFC can hear." *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring) (quoting 28 U.S.C. § 1491(a)(1)). In challenging Defendants' policy in district court, Plaintiffs trace the path outlined in Justice Barrett's controlling concurrence in *NIH. See id*. Indeed, Defendants concede that "claims challenging only the DOE Memo should be severed, as they cannot be transferred to the [CFC]." Mot. p. 8. This Court should reject Defendants' mischaracterization of Plaintiffs' APA claims. Those claims "belong in district court." *See NIH*, 145 S. Ct. at 2662.

Even if the Court were to conclude that the sources of the rights Plaintiffs seek to vindicate are their award agreements, the Tucker Act still would not preclude this Court's jurisdiction under binding Ninth Circuit precedent. *See Pacito v. Trump*, 169 F.4th 895, 925–26 (9th Cir. 2026) (rejecting defendants' argument that plaintiffs' rights under terminated cooperative agreements were necessarily contractual). Here, Plaintiffs pled that the federal government "made a deliberate choice to proceed by cooperative agreement and not by contract." *Id.* at 927; *see* Compl. ¶ 84.[2] According to the Ninth Circuit, the federal government does not receive a "direct benefit from

---

[2] To Plaintiffs' knowledge, only one award named in their Complaint was not designated as a cooperative agreement. *See* Compl. ¶ 84(b).

9

th[ose] arrangement[s]" of the kind the court viewed as necessary to create contractual rights. *Pacito*, 169 F.4th at 925–26. Indeed, the federal government itself has argued that cooperative agreements "d[o] not provide a direct benefit to the Government" and are "not enforceable contract[s] within the jurisdiction of the [CFC]." *Pacito*, 169 F.4th at 927. Yet Defendants argue that Plaintiffs' agreements have consideration merely because awardees "agreed to comply with an array of requirements." Mot. at 10 (quoting *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021)). But that alone was not sufficient even in *Columbus Regional Hospital*; as the court explained, some of the requirements of the agreement at issue there conferred a benefit on the government. *Id.* at 1340.

### 2.    Plaintiffs do not seek contractual remedies

As to the second *Megapulse* prong, Plaintiffs seek equitable remedies under the APA, not contractual ones, or any other relief designed "to enforce a contractual obligation to pay money." *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025); Compl. pp. 65–66.

Defendants not only mischaracterize Plaintiffs' APA claims but also Plaintiffs' prayer for relief. Contrary to their assertions, nothing in the prayer for relief seeks "declaratory relief that the terminations were unlawful," "reinstatement of terminated grants," or "enforcement of contractual obligations" pursuant to the APA counts. Mot. p. 6. Nor do Plaintiffs invoke the APA to ask this Court to "compel the enforcement of the government's monetary obligations pursuant to [Plaintiffs' cooperative] agreements." *Id*. Instead, as relief for their APA claims, Plaintiffs ask the Court to vacate the DOE Memo and enjoin Defendants from implementing it any further. Compl. pp. 65–66. As Justice Barrett emphasized, this is standard relief under the APA. *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring). Nor do Plaintiffs request that the Court enforce any contractual right to payment. Instead, they request that the Court enter a declaratory judgment that Defendants "may not terminate or abandon awards" based on the DOE Memo. Compl. p. 66. Defendants misconstrue this prospective request, preferring instead to contest relief that Plaintiffs have *not* sought: "declaratory relief that the [award] terminations were unlawful." *Compare* Compl. p. 66, *with* Mot. p. 6.

Nor does the possibility that this equitable relief could indirectly lead to disbursement of

10

funds transform the nature of the relief Plaintiffs seek. "[A] plaintiff does not 'in essence' seek monetary relief . . . merely because he or she hints at some interest in a monetary reward from the federal government or *because success on the merits may obligate the United States to pay the complainant.*" *Cmty. Legal Servs.*, 155 F.4th at 1105; *see also California*, 604 U.S. at 651 (district court jurisdiction "'not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds"). Plaintiffs' requested APA relief is not a demand for disbursement of any funds, *see Washington v. U.S. Dep't of Educ.*, 161 F.4th 1136, 1140 (9th Cir. 2025), and indeed, if granted, may never result in the disbursement of funds.

### B.    Plaintiffs do not seek money damages and the CFC lacks authority to grant adequate relief

For the same reasons Plaintiffs' claims satisfy the second *Megapulse* prong, the Court should conclude that Plaintiffs do not seek money damages and that the district court is the only path to adequate relief. Plaintiffs request vacatur, injunctive relief, and declaratory relief to prevent Defendants from continuing to act in accordance with the unlawful policy memorialized in the DOE Memo—traditional equitable relief the CFC has no power to provide. Compl. pp. 65-66; *see Tohono O'Odham*, 563 U.S. at 313. Defendants ignore the *Megapulse* test, the binding framework in this circuit, *Cmty. Legal Servs.*, 155 F.4th at 1102, and instead invent their own test, which asks whether Defendants have a contract enforceable in the CFC. Mot. p. 9. Defendants cite no authority for this artificially narrow test. But even if it were determinative, Plaintiffs' claims are properly in this Court because, as discussed above, this Court, not the CFC, has jurisdiction over claims based on Plaintiffs' cooperative agreements, *Pacito*, 169 F.4th at 925–26, and Plaintiffs seek equitable relief, *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring).

\*      \*      \*

Plaintiffs' claims are not "disguised" breach-of-contract claims, and therefore the Tucker Act does not confer jurisdiction on the CFC. That forecloses transfer under 28 U.S.C. § 1631. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988); *Metzinger*, 20 F.4th at 780–81. It also means that jurisdiction belongs to this Court. *Cmty. Legal Servs. in E. Palo Alto v. Dep't of Health & Hum. Servs.*, 137 F.4th 932, 939 (9th Cir. 2025) ("[T]here cannot be exclusive

11

jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act.") (quoting *Tootle v. Sec'y of Navy*, 446 F.3d 167, 177 (D.C. Cir. 2006)).

### III.   DEFENDANTS' REMAINING ARGUMENTS FAIL

#### A.   DOE's adoption of its review process was a final agency action

Defendants formally launched their pre-determined review process when they issued the DOE Memo; it was a "definitive statement" of DOE's intent that precipitated real consequences. That is precisely the kind of final agency action that is reviewable under the APA. *See Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982–83 (9th Cir. 2006).

The APA defines an "agency action" broadly. The term "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). It "is meant to cover comprehensively every manner in which an agency may exercise its power." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001). A *final* action is one that (1) "mark[s] the consummation of the agency's decisionmaking process" and (2) determines "rights or obligations . . . from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Or. Nat. Desert*, 465 F.3d at 982 (alterations and citation removed).

Plaintiffs allege an agency action—the adoption of DOE's review process memorialized in the DOE Memo—that was final, not "merely tentative or interlocutory." *Am. Fed'n*, 139 F.4th at 1038. The DOE Memo memorialized a final policy that governed—and continues to govern—the review of existing DOE awards. DOE issued a press statement the same day it released the DOE Memo "announc[ing]" the "new policy"—in other words, describing a decision DOE already made. Compl. ¶ 58. And once the policy was in place, DOE did not waver. Plaintiffs had no meaningful opportunity to engage an interactive process about their awards before they were terminated. *See, e.g.*, Compl. ¶¶ 114, 122, 176; *see San Francisco Unified Sch. Distr. v. AmeriCorps*, 789 F. Supp. 3d 716, 740 (N.D. Cal. 2025) (concluding that lack of interactive process favored conclusion that there was final agency action). Nor is any further action required to effectuate the DOE Memo. In short, Defendants "have made up their minds." *Am. Ass'n of*

12

*Univ. Professors*, 815 F. Supp. 3d at 968.

Defendants argue that Plaintiffs challenge an ongoing process that was merely the precursor to the terminations of Plaintiffs' awards, the *real* final agency action (which, conveniently, they say cannot be challenged here). That this case may implicate multiple final agency actions presents no issue because "the APA does not 'bar[] a plaintiff from challenging a number of discrete final agency actions all at once.'" *Thakur*, 787 F. Supp. 3d at 985–86 (quoting *New York v. Trump*, 133 F.4th 51, 68 (1st Cir. 2025)). Indeed, the fact that Defendants took subsequent actions pursuant to their decision to adopt the review process underscores the finality of that decision: The review process "was used to execute mass terminations and continued to be used through multiple waves of terminations." *Id.* at 986. That is a final agency action. *Id.*

And there can be no honest dispute that "legal consequences . . . flow[ed]" from the DOE policy. *Bennett*, 520 U.S. at 177–78. DOE relied on the policy to review and terminate Plaintiffs' awards. Compl. ¶ 84. Defendants acknowledge here that the terminations "ensu[ed]" from the DOE Memo. Mot. p. 1, *see also id.* p. 3 ("After the Secretary issued the memorandum, DOE initiated its review of existing financial awards, and sent termination notices for 24 grants in May 2025 and approximately 285 grants in October 2025.") Defendants adopted the review process to achieve their goal of withholding billions of dollars of congressionally mandated funding—they cannot argue now that the review process had no consequences.

Defendants' cases are inapposite. Plaintiffs do not challenge an "interpretative statement that advise[d] the public of the agency's interpretation of the statute," as in *American Tort Reform Association v. OSHA*, 738 F.3d 387, 393 (D.C. Cir. 2013). Nor do they seek anything like the "perpetual judicial oversight" the D.C. Circuit rejected in *Cobell v. Kempthorne*, 455 F.3d 301, 315 (D.C. Cir. 2006). District courts, including this Court, have concluded that policies like the one challenged here are final. *See, e.g., Thakur*, 787 F. Supp. 3d at 986; *Nat'l Council of Nonprofits v. OMB*, 775 F. Supp. 3d 100, 123–24 (D.D.C. 2025); *Ass'n of Am. Universities v. Dep't of Def.*, 806 F. Supp. 3d 79, 96 (D. Mass. 2025).

**B.    Plaintiffs have standing to seek equitable relief**

Finally, the Court should reject Defendants' arguments that Plaintiffs lack standing to

13

challenge the DOE Memo because any injury they suffered is not redressable. Mot. p. 12. Defendants argue that this Court cannot redress Plaintiffs' injuries because they are financial, Mot. p. 11-12, and cannot act to prevent future harms because Plaintiffs have no imminent future injury, *id.* p. 12. Defendants are wrong. Plaintiffs' injuries from the DOE Memo and Defendants' resulting review process are redressable through precisely the forms of relief that Plaintiffs seek.

First, financial relief is not necessary to redress Plaintiffs' injuries. The adoption of the DOE Memo harmed Plaintiffs in ways that were not strictly financial. It indefinitely froze awards in contravention of multiple court orders, creating chaos and uncertainty. Compl. ¶¶ 82–83. And as Defendants admit, DOE's review "remains[] ongoing." *Id.* p. 12. That means Plaintiffs will remain subject to the unlawful review process, and all the confusion and unfairness it engenders, absent court intervention. Indeed, Plaintiffs identified several awards that remain in limbo in the review process, *e.g.* Compl. ¶¶ 114, 130, 136, 139, or that DOE has abandoned, *e.g.*, *id.* ¶¶ 84(i), (j), 128–29, 197–99. The harm caused by the review process will continue at least until the process ends or the Court steps in.

A favorable ruling will redress other harms Plaintiffs have alleged too. Defendants' withholding of funds that Congress intended for DOE programs harms Plaintiffs' ability to fairly compete for congressionally mandated funding. Compl. ¶¶ 56, 63–64, 67, 85. The Court's invalidation of the action that caused that "inability to compete" "redresses the injury." *Planned Parenthood of Greater Wash. v. Dep't of Health and Human Servs.*, 946 F.3d 1100, 1108–09 (9th Cir. 2020). Defendants also subjected Plaintiffs to a pretextual process that, among other things, denied them a modicum of fair process and disregarded their serious reliance interests, in violation of the APA. *E.g.*, Compl. ¶¶ 217, 221, 225, 230. This Court's vacatur of the DOE Memo policy and an injunction against its implementation would therefore benefit Plaintiffs directly. *See Regents of Univ. of Cal. v. Shalala*, 82 F.3d 291, 298 (9th Cir. 1996).

Second, Plaintiffs also have standing to seek prospective relief, contrary to Defendants' argument that there is no risk of imminent future injury. Mot. pp. 12–13. As explained above, Plaintiffs face a risk of future injury as long as DOE's review process continues. Defendants rely on *City of St. Paul v. Wright*, where a district court concluded, partly because DOE's review

14

process was ongoing, that plaintiffs had not shown they faced a real and immediate threat of repeated injury to justify prospective relief. Mot. p. 12 (citing No. 25-cv-03899 (APM), 2026 WL 913112, at *3 (D.D.C. Apr. 3, 2026)). But the plaintiffs in *St. Paul* were on different footing, both factually and legally. They challenged their award terminations, not DOE's award-review policy, and they did so on equal-protection grounds only. The court concluded that the terminations violated equal protection and vacated them, and DOE reinstated the awards. *Id.* at *2. The court had to consider whether DOE might *again* terminate the awards "based on the same improper classification." *Id.* at *3. It concluded that the ongoing review process was irrelevant because "even if these reviews were to result in some grant terminations," there was no concrete evidence that Plaintiffs' grants would again be terminated for the same improper reason. *Id.*

Here, by contrast, Plaintiffs alleged that they are injured directly by the review process. Plaintiffs suffer harm as long as it continues. Moreover, unlike the *St. Paul* plaintiffs, who were mostly private entities, Plaintiffs are States whose funding has been targeted by the federal government throughout the past sixteen months. *See*, *e.g.*, *New York*, 171 F.4th 1; *Washington*, 161 F.4th 1136; *California*, 604 U.S. 650; *Illinois v. FEMA*, 801 F. Supp. 3d 75 (D.R.I. 2025). And the *St. Paul* plaintiffs faced an evidentiary burden at summary judgment. 2026 WL 913112 at *2. Plaintiffs have alleged that several awards are currently subject to the unlawful, ongoing review process, *see*, *e.g.*, Compl. ¶¶ 84, 114, 128–30, 136, 139, 197–99—which is all is required to survive Defendants' jurisdictional attack, *Safe Air for Everyone*, 373 F.3d at 1039.

*     *     *

Defendants' arguments for dismissal fail. If the Court disagrees, any dismissal should be without prejudice and with leave to amend. *Fleck & Assoc., Inc. v. City of Phoenix*, 471 F.3d 1100, 1102 (9th Cir. 2006) (dismissal without prejudice based on standing); *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 574 (9th Cir. 2019) (same regarding final agency action).

**CONCLUSION**

The Court should deny Defendants' motion.

15

Dated:  May 11, 2026

Respectfully submitted,

**ROB BONTA**
Attorney General of California

TODD GRABARSKY
R. MATTHEW WISE
Supervising Deputy Attorneys General
KRISTI HUGHES
HARALD H. KIRN
RYAN EASON

*/s/ Christopher J. Kissel*
CHRISTOPHER J. KISSEL
Deputy Attorneys General

*Attorneys for Plaintiffs State of California and California Governor's Office of Business and Economic Development*

**PHILIP J. WEISER**
Attorney General of Colorado

By: */s/ Sarah H. Weiss*
SARAH A. KRAKOFF, CBA #27366*
Deputy Solicitor General
CARRIE NOTEBOOM, CBA #52910**
Assistant Deputy Attorney General
SARAH H. WEISS, CBA #61914**
Senior Assistant Attorney General
Colorado Department of Law
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
sarah.krakoff@coag.gov
carrie.noteboom@coag.gov
sarah.weiss@coag.gov

*Attorneys for Plaintiff State of Colorado*

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: */s/ Kaia Boonzaier*
KAIA BOONZAIER, CA SBN # 348123
CAITLIN M. SODEN, WSBA # 55457**
LEAH A. BROWN, WSBA # 45803**
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104
206-464-7744
kaia.boonzaier@atg.wa.gov
caitlin.soden@atg.wa.gov
leah.brown@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

16

**WILLIAM TONG**
Attorney General of Connecticut

By: */s/ Andrew M. Ammirati*
Andrew M. Ammirati**
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
(860) 808-5090
Andrew.Ammirati@ct.gov

*Attorneys for Plaintiff State of Connecticut*

**KWAME RAOUL**
Attorney General of Illinois

By: */s/ Paul Berks*
Paul Berks**
Joanna Brinkman*
Complex Litigation Counsel
Sherief Gaber**
Jason E. James*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. Lasalle St.
Chicago, IL 60603
(773) 919-2923
Paul.Berks@ilag.gov

*Attorneys for Plaintiff State of Illinois*

**ANTHONY G. BROWN**
Attorney General of Maryland

By: */s/ Steven J. Goldstein*
Steven J. Goldstein**
Assistant Attorney General
Office of the Attorney General of Maryland
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6414
sgoldstein@oag.maryland.gov

*Attorneys for Plaintiff State of Maryland*

**ANDREA JOY CAMPBELL**
Attorney General of the Commonwealth of Massachusetts

By: */s/ Vanessa A. Arslanian*
Vanessa A. Arslanian**
*State Trial Counsel*
Julia Jonas-Day*
*Assistant Attorney General*
1 Ashburton Pl.
Boston, MA 02108
(617) 963-2107
vanessa.arslanian@mass.gov
julia.jonas-day@mass.gov

*Attorneys for Plaintiff Commonwealth of Massachusetts*

17

**JENNIFER L. DAVENPORT**
Acting Attorney General of New Jersey

By: */s/ Jessica Palmer*
Jessica L. Palmer*
  *Assistant Attorney General*
Yael Fisher**
Elizabeth Van Winkle*
  *Deputy Attorneys General*
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
609-376-2984
Jessica.Palmer@law.njoag.gov

*Attorneys for Plaintiff State of New Jersey*

**LETITIA JAMES**
Attorney General of New York

By: */s/ Matthew Eisenson*
MATTHEW EISENSON**
*Assistant Attorney General*
MICHAEL J. MYERS *
*Senior Counsel*
KELSEA SUAREZ*
*Special Assistant Attorney General*
Environmental Protection Bureau
Office of the Attorney General
28 Liberty Street, 19th Floor
New York, NY 10005
(212) 416-8481
matthew.eisenson@ag.ny.gov
michael.myers@ag.ny.gov
kelsea.suarez@ag.ny.gov

*Attorneys for Plaintiff State of New York*

**DAN RAYFIELD**
Attorney General of Oregon

By: */s/ Coby Howell*
COBY HOWELL**
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Coby.Howell@doj.oregon.gov

*Attorneys for Plaintiff State of Oregon*

**PETER F. NERONHA**
Attorney General of Rhode Island

By: */s/ Eshan Dabak*
Eshan Dabak (R.I. Bar No. 11103)**
  Special Assistant Attorney General
Rhode Island Attorney General's Office
150 South Main Street
Providence, RI 02903
(401) 274-4400, ext. 2041
edabak@riag.ri.gov

*Attorneys for Plaintiff State of Rhode Island*

18

**CHARITY R. CLARK**
Attorney General of Vermont

By: */s/ Jonathan T. Rose*
Jonathan T. Rose**
Solicitor General
Office of the Vermont Attorney General
109 State Street
Montpelier, VT 05609
(802) 878-3171
jonathan.rose@vermont.gov

*Attorney for Plaintiff State of Vermont*

**JOSHUA L. KAUL**
Attorney General of Wisconsin

By: */s/ Aaron J. Bibb*
Aaron J. Bibb, Wisconsin State Bar No.
1104662**
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-0810
aaron.bibb@wisdoj.gov

*Attorney for Plaintiff State of Wisconsin*

*Pro hac vice application forthcoming
**Admitted pro hac vice