BRETT A. SHUMATE
Assistant Attorney General
Civil Division
ERIC J. HAMILTON
Deputy Assistant Attorney General
JOSEPH E. BORSON
Assistant Branch Director
ELIZABETH B. LAYENDECKER (Cal Bar No. 357429)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 616-5046
Email: Elizabeth.B.Layendecker@usdoj.gov

*Attorneys for United States*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.,* ) | Case No. 3:26-cv-1417-RFL |
| ) | |
| Plaintiffs, ) | **DEFENDANTS' REPLY IN SUPPORT OF** |
| ) | **THEIR MOTION TO DISMISS AND TO** |
| v. ) | **TRANSFER** |
| ) | |
| CHRISTOPHER WRIGHT, in his official ) | Judge:  Hon. Rita F. Lin |
| capacity as Secretary of Energy, *et al.,* ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

FED. DEFS' REPLY IN SUPPORT OF MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

1

**INTRODUCTION**

Plaintiffs' response confirms that the claims challenging the grant terminations are committed to the exclusive jurisdiction of the Court of Federal Claims.  Accordingly, the Court should transfer Counts I, II, III, V, and VI to the extent they challenge the grant terminations and dismiss Plaintiffs' remaining claims challenging the DOE Memo for lack of jurisdiction and/or failure to state a claim.  Alternatively, the Court should dismiss all claims.

**ARGUMENT**

**I.     The Court of Federal Claims Has Exclusive Jurisdiction Over Plaintiffs' Grant Termination Claims.**

As explained in Defendants' motion, jurisdiction over Plaintiffs' claims challenging the grant terminations turns on whether (1) the relief Plaintiffs seek is expressly or impliedly forbidden and (2) whether an adequate remedy lies in the Court of Federal Claims.

**A.  The Tucker Act Commits the Relief Sought to the Exclusive Jurisdiction of the Court of Federal Claims.**

The Tucker Act forbids the relief Plaintiffs seek, i.e., the reinstatement of their grant agreements (or continued paying under those agreements).  The parties agree that whether relief is forbidden depends upon "the source of the rights upon which" Plaintiffs base their claims, and "the type of relief sought[.]"  *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982).

Here, consistent with Supreme Court precedent, the source of the rights sought to be vindicated in Plaintiffs' claims challenging the grant terminations are the rights conferred by the grants themselves. *See Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2659 (2025) ("NIH"); *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) ("*California*") (per curiam).  It is the grants—and only the grants—that entitle the Plaintiffs to continued financial payment, the key relief they seek under their termination claims.  Plaintiffs seemingly do not dispute that that is the case for Counts I, V, and VI.  At most, Plaintiffs argue that these claims do not rely on a "money-mandating" source of law—they rely on constitutional provisions instead.  Plaintiffs' Opposition to Defendants' Motion to Dismiss and to Transfer at 6, ECF No. 72 ("Pls.' Opp'n").  But that argument merely begs the question of what the ultimate source of the right is for Plaintiffs' claims challenging the terminations: those constitutional

FED. DEFS' REPLY IN SUPPORT OF MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

provisions or the grants.  Even when plaintiffs rely on constitutional or statutory provisions to challenge grant terminations, the source of the right to payment that they are seeking to enforce is the grant agreement.  *See, e.g.*, *Child Trends, Inc. v. United States Dep't of Educ.*, 795 F. Supp. 3d 700, 727–28 (D. Md. 2025) ("Plaintiffs' entitlement to receive the specific funding that was terminated arose only because of the grant agreements executed between Plaintiffs and the Department of Education.  By contrast, neither the ESRA nor indeed the Constitution creates enforceable rights for Plaintiffs to receive the grants in question.").   While the constitutional provisions on which Plaintiffs rely cannot serve as independent money-mandating substantive sources of law to support Tucker Act jurisdiction, the underlying grants are the ultimate source of Plaintiffs' rights; without them, Plaintiffs have no entitlement to relief.  *See Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998) ("If the Modification Center Contract imposes no such obligation, the United States owes no duty to General Dynamics giving rise to an alleged constitutional violation.").  Said differently, it is not the Constitution that would entitle Plaintiffs to funding, it is the grant agreement.  To be sure, it may be a constitutional violation that makes the grant termination improper—which is why the Court of Federal Claims has jurisdiction over claims alleging that a contract termination was unconstitutional, *see, e.g., Consol. Edison Co. of New York v. U.S., Dep't of Energy*, 247 F.3d 1378, 1385 (Fed. Cir. 2001), but that is simply the reason why the breach is remediable.  It does not change the ultimate source of the right to funding.

Under the second prong—the type of relief sought—Plaintiffs here are seeking contractual remedies for Counts I, II, III, V, and VI, *i.e.*, the reinstatement of their agreements (and the continued payment of money as set out in those agreements).  Plaintiffs do not appear to contest Defendants' argument that they are seeking contractual remedies for Counts I, V, and VI.  *See* Pls.' Opp'n at 10 (arguing that Plaintiffs do not seek contractual remedies for their APA Claims, Counts II and III).

With respect to the APA claims, Counts II and III, Plaintiffs argue that "nothing in the prayer for relief seeks 'declaratory relief that the terminations were unlawful,' 'reinstatement of terminated grants,' . . . 'enforcement of contractual obligations[,]'" or "enforcement of the government's monetary obligations pursuant to Plaintiffs' cooperative agreements."  Pls.' Opp'n at 10 (quoting Defendant's

FED. DEFS' REPLY IN SUPPORT OF MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

Motion to Dismiss and to Transfer at 6, ECF No. 68 ("Defs.' Mot."). Contrary to Plaintiffs' assertions, their Prayer for Relief for the APA claims is not limited to "vacat[ing] the DOE Memo and enjoin[ing] Defendants from implementing it any further." Pls.' Opp'n at 10. They seek declaratory relief that "Defendants may not terminate or abandon awards based on the Administration's policy preferences or the State in which the awardee is located." Compl., Prayer for Relief ¶ 2(c), ECF No. 1. That is seeking termination-related relief on its face. Plaintiffs further state that "if no injunctive relief is awarded pursuant to Counts I and II that would result in the reinstatement of Plaintiffs' awards," then the court should stay the terminations pursuant to 7 U.S.C. § 705, indicating that at least for their Count II APA claim, Plaintiffs are seeking injunctive relief reinstating the awards. *Id.* ¶ 2(d). And given that the relief sought for Counts II and III was otherwise identical, Defendants understood Plaintiffs' secondary request for declaratory relief to entail injunctive relief reinstating the grant agreements. *See id.* ¶ 2.

Plaintiffs' disclaimer that they do not seek reinstatement of the terminated grants is undermined by the following paragraph, which suggests that equitable relief in this case may "indirectly lead to disbursement of funds," despite it being framed as a challenge to agency policy guidance. Pls.' Opp'n at 11. As explained in Justice Barrett's concurrence, the appropriate means of obtaining such disbursement in cases, like this one, where awardees challenge both the underlying policy guidance and grant terminations, occurs on two separate tracks: 1) a challenge to the underlying policy in district court; and 2) a challenge in the Court of Federal Claims to the terminations of the grants. *See NIH*, 145 S.Ct. at 2661 (holding that where "the CFC has exclusive jurisdiction over the grant terminations . . . the plaintiffs cannot end-run that limit simply by packaging them with a challenge to agency guidance."). Terminating the Memo itself cannot lead to disbursement of funds as to the terminated grants. *See id.*

Plaintiffs suggest that even if both prongs of *Megapulse* are resolved in the Government's favor, the Tucker Act would still not impliedly forbid relief in this case. They argue that, if *Megapulse* is not resolved in their favor, the Court should eschew that standard in favor of a hardline rule that all cooperative agreements are categorically excluded from Court of Federal Claims jurisdiction because they do not provide a benefit to the federal government. Pls.' Opp'n at 9–10. However, neither the Federal Circuit, nor the Ninth Circuit, nor the Federal Government has determined that all cooperative

FED. DEFS' REPLY IN SUPPORT OF MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

agreements categorically fall outside of Tucker Act jurisdiction.  To the contrary, under Federal Circuit precedent, "a contract's classification as a cooperative agreement does not determine whether the United States Court of Federal Claims has jurisdiction over a breach of contract claim." *San Antonio Hous. Auth. v. United States*, 143 Fed. Cl. 425, 461 (2019) (citing *Trauma Serv. Grp. v. United States*, 104 F.3d 1321 (Fed. Cir. 1997)).  In *Trauma Service Group*, the Federal Circuit explained that it need not assess whether the cooperative agreement in that case was a valid contract, as "any agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government." *Trauma Serv. Grp.*, 104 F.3d at 1326.  That is true here.  *See* Defs.' Mot. at 8–11.

Further, Federal Circuit precedent, not Ninth Circuit precedent, will govern any appeals.  For nearly 40 years, the Federal Circuit "has been tasked by Congress to be the exclusive arbiter of the issue [of transfer for lack of jurisdiction] when it is brought to us in these interlocutory appeals.  [It] of course [is] bound to follow [its] own circuit law.  District courts, as well as counsel for the parties, would be better able to predict the outcome of such appeals if they follow the same law." *See Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1128 (Fed. Cir. 2007).

*Pacito v. Trump*, and the Government's brief from 2019 cited in *Pacito* (and by Plaintiffs), are not to the contrary.  169 F.4th 895 (9th Cir. 2026).   In *Pacito*, the Ninth Circuit explained that "the agency's choice of instrument has been persuasive but *not conclusive* for Tucker Act purposes".  *Id.* at 926 (emphasis added).  The Government's position in <u>St. Bernard Par. Gov't v. United States</u>, 916 F.3d 987 (Fed. Cir. 2019), discussed in *Pacito*,  was that the cooperative agreement at issue was not a contract because it did not contemplate money damages and lacked consideration, not that cooperative agreements categorically can never benefit the government such that they would be considered contracts.  Here, as Defendants have explained,  there was consideration and Defendants' obligations under the grants are enforceable with money damages.  *See* Defs.' Mot. at 10.

### B.  Plaintiffs Have an Adequate Remedy in the Court of Federal Claims.

An adequate remedy lies in the Court of Federal Claims for the grant termination claims, as the

FED. DEFS' REPLY IN SUPPORT OF MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

grants are contracts falling within Tucker Act jurisdiction. Plaintiffs again do not appear to dispute that such an adequate remedy lies in the Court of Federal Claims for their grant termination claims arising under constitutional provisions (Counts I, V, and VI). Defendants additionally note that whether an adequate remedy is available is a prerequisite for jurisdiction over non-statutory and APA claims alike, and their apparent concession that there is such an adequate remedy in the Court of Federal Claims is fatal to their argument that this Court has jurisdiction. *See* 33 Wright & Miller's Fed. Prac. & Proc. Judicial Review § 8307 (2d ed.).

Plaintiffs similarly do not appear to dispute the legal arguments Defendants have advanced in support of the contention that an adequate remedy lies in the Court of Federal Claims, instead arguing that satisfying the second prong of *Megapulse* is sufficient. Not so. The *Megapulse* test under section 702 is distinct from the test applied by the Federal Circuit to determine whether the Court of Federal Claims provides an adequate remedy. *Suburban Mortg. Assocs.*, 480 F.3d at 1124–25. As the Federal Circuit explained, because the question posed by *Megapulse* of whether a suit is for money damages relies on a "murky" distinction "at best," the Circuit turns first to the question of "whether the cause is one over which the Court of Federal Claims has jurisdiction under the Tucker Act" by assessing whether the Court of Federal Claims provides an adequate remedy. *Id.* at 1124. And, as Defendants explained in their Motion, the Court of Federal Claims provides an adequate remedy for claims falling within its jurisdiction. *See Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1349 (Fed. Cir. 2005).

### C. Plaintiffs' Constitutional Claims are Subject to the Same Standard.

As stated above, Plaintiffs do not appear to contest that their constitutional claims challenging the grant terminations (Counts I, V, and VI) are impliedly forbidden, or that there is an adequate remedy for those claims in the Court of Federal Claims. Plaintiffs instead suggest that, because they purport not to rely on section 702, that neither of those requirements apply. They further suggest that no waiver of sovereign immunity is required for them to challenge the grant terminations and seek reinstatement. Plaintiffs are wrong on both counts.

A core feature of the history of judicial review of government action is the principle of sovereign immunity—that the sovereign is generally immune from suit *unless* it has consented. *United States v.*

FED. DEFS' REPLY IN SUPPORT OF MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

*Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). "Suits against the United States are 'available by grace and not by right,' and the relief available is subject to the conditions Congress sets." *NIH*, 145 S. Ct. at 2662 (Barrett, J., concurring). That is particularly true when money is sought. *See E. V. v. Robinson*, 906 F.3d 1082, 1090 (9th Cir. 2018) (explaining that ultra vires claims for breach of contract are generally foreclosed because "the relief sought in a suit nominally addressed to the officer is relief against the sovereign." (quoting *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 684–87 (1949)); see also *Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) ("[I]t appears unlikely that Plaintiffs' ultra vires claims, which allege the Government violated the Constitution when it terminated or suspended Plaintiffs' grants, would provide a detour around the Tucker Act.") (citing *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327–328 (2015) ("The power of federal courts of equity to enjoin unlawful executive action is subject to . . . implied statutory limitations," and "the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.")). Second, the adequate remedy requirement applies to APA and nonstatutory claims alike. *See* 33 Wright & Miller's Fed. Prac. & Proc. Judicial Review § 8307 (2d ed.) (explaining that plaintiffs purporting to rely on the general equitable powers of federal courts are still subject to the "traditional requirement for equitable relief that a plaintiff lack an adequate remedy at law."). And to the extent Plaintiffs view that requirement as being substantively identical to 702 in the context of the Tucker Act, *see* Pls.' Opp'n at 11, as both ultimately turn on whether the Court of Federal Claims has jurisdiction over the case, both requirements would apply.

## II.    Plaintiffs' Remaining Claims Should Be Dismissed.

### A.  The DOE Memo is Not a Final Agency Action.

Plaintiffs' APA claims should be dismissed to the extent they challenge the DOE Memo because there has not been any final agency action cognizable in this Court. As Defendants explained, policies establishing an ongoing process are not final agency actions because alleged "flaws in the entire 'program' cannot be laid before the courts for wholesale correction under the APA." *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 873 (1990).

FED. DEFS' REPLY IN SUPPORT OF MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

Here, Defendants have hewn to the distinction laid out in Justice Barrett's concurrence, wherein she suggested that a similar review process adopted by NIH, pursuant to which the grant terminations at issue in that case were made, might not be final agency action. *See NIH*, 145 S. Ct. at 2661. In that case, the NIH had issued multiple external and internal memoranda regarding a review process to ensure that grant funding was consistent with the Administration's policy priorities. *See Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, No. 1:25-CV-10787-WGY, 2025 WL 1747128, at *1 (D. Mass. June 23, 2025). And the plaintiffs in that case had grants terminated pursuant to the review processes outlined in those policy documents announcing the review. Under this nearly identical fact pattern, Justice Barrett suggested that such policies may not be final agency action. *NIH*, 145 S. Ct. at 2662 ("Of course, whether claims about the guidance in this case will succeed is another question. It is not obvious, for instance, that NIH's guidance is final agency action."). That makes sense because, again, the guidance does not itself dictate the legal status of any grant, it merely begins a review that may (or may not) lead to an agency action that may alter that legal status.

Lastly, the distinction that Plaintiffs attempt to draw between interpretive rules and policy guidance regarding agency procedures is immaterial in this case. Both types of actions lack independent legal effect, meaning that any legal consequences do not flow directly from these guidance documents themselves. Interpretive rules and policy statements both fall into the category of non-legislative rules, which are exempt from the notice and comment requirements of 5 U.S.C. § 553 and do not carry the force and effect of law. *See* 5 U.S.C. § 553(b)(A); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95–96 (2015). These non-legislative rules "generally do not qualify" as final agency action "because they are not finally determinative of the issues or rights to which [they are] addressed." *Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*, 738 F.3d 387, 395 (D.C. Cir. 2013) (quotation omitted).

### B. Plaintiffs Lack Standing to Challenge the DOE Memo.

Plaintiffs' claims challenging the DOE Memo exceed the limits of Article III jurisdiction. As explained in Defendants' Motion, Plaintiffs cannot base any claim for relief on the alleged injury from the terminated grants. Although Plaintiffs argue that they suffer injuries from uncertainty regarding several grants identified in the complaint, *see* Pls.' Opp'n at 14, Plaintiffs also allege that all of those

FED. DEFS' REPLY IN SUPPORT OF MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

grants were terminated, but have sought relief through informal adjudication processes available to DOE grant recipients. *See* Compl. ¶¶ 114, 130, 136, 139. Any adjudication of the lawfulness of those proceedings is accordingly prudentially unripe for review. And, in any event, any uncertainty as to the ultimate resolution of the IDR process is a result of Plaintiffs' availing themselves of this optional process. Defendants have not injured Plaintiffs by providing an opportunity for them to resolve issues regarding the terminations with the agency directly, particularly when the terminations themselves are not reviewable in this Court.

Plaintiffs similarly cannot allege a cognizable injury from the Government's general administration of federal programs. This argument only underscores that the claims challenging the DOE Memo are generalized grievances. It is well-established that such grievances are beyond the limits set by Article III. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 575 (1992). Courts are not the appropriate fora to adjudicate claims that allege "only a general legal, moral, ideological, or policy objection to a particular government action." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). And allegations that the government has acted illegally or claims based on an "asserted right to have the Government act in accordance with law" are insufficient to satisfy Article III. *Id.* at 381 (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984)). Further, this is not a case where plaintiffs have alleged standing on the basis of an unfair competition, or a similar procedural injury that itself injured them. *See Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1109 (9th Cir. 2020) (holding that an uneven playing field for grant applicants sufficed to establish competitor standing).

Finally, Plaintiffs fail to distinguish this case from *City of Saint Paul v. Wright* with respect to standing for prospective relief. 816 F. Supp. 3d 65, 74 (D.D.C. 2026). As an initial matter, the *Saint. Paul* Plaintiffs brought claims challenging grant terminations under both the equal protection clause and the First Amendment. The Court entered judgment for Plaintiffs on the former claim, *id.* at 72–74, and held that the plaintiffs lacked standing as to the latter claim, *id.* at 74–76. Here, as in *Saint Paul*, Plaintiffs have not identified any existing awards that they believe are at imminent risk of termination; they have only identified awards that have already been terminated. *See City of Saint Paul v. Wright*,

FED. DEFS' REPLY IN SUPPORT OF MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

9

No. 25-cv-03899 (APM), 2026 WL 913112, at *3 (D.D.C. Apr. 3, 2026).

### C. Plaintiffs' Ultra Vires Claim Fails.

Plaintiffs have not established entitlement to ultra vires review.  To the extent they challenge the grant terminations, as explained above, such review is committed to the jurisdiction of the Court of Federal Claims.  *See supra* § I.C.  More specifically, ultra vires review outside the APA is only available when the invocation of authority not granted is "so extreme that one may view it as jurisdictional or nearly so."  *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988).

Ultra vires claims are available in an extremely narrow set of circumstances and require a showing that Defendants have violated a "clear and mandatory" legal obligation, and that in the absence of ultra vires review the plaintiff would be "wholly deprive[d] . . . of a meaningful and adequate" opportunity to vindicate their rights.  *Leedom v. Kyne*, 358 U.S. 184, 188 (1958); *Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991).  Accordingly, ultra vires review outside the APA is only available when the invocation of authority not granted is "so extreme that one may view it as jurisdictional or nearly so."  *Griffith*, 842 F.2d at 493.

Here, Plaintiffs' ultra vires claim is foreclosed by *Dalton v. Specter*, 511 U.S. 462 (1994).  Though framed—at least in Plaintiffs' Opposition—as a constitutional claim, Plaintiffs merely allege that "Defendants acted without lawful authority."  Compl. ¶ 240; *cf. Sierra Club v. Trump*, 929 F.3d 670, 696 (9th Cir. 2019) (holding that Plaintiffs' claim alleging a violation of the appropriations clause on the grounds that the Government had usurped Congress' appropriations clause authority by directing funding appropriated for other purposes to the building of fencing at the southern border). This is a statutory claim by another name, and fails because the government has authority to terminate grants, *see* 2 C.F.R. § 200.340, (and thus review grants for potential termination)—Plaintiffs merely dislike how that authority has been exercised.  But that is not a proper ultra vires claim.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court transfer Counts I, II, III V and VI to the extent they challenge the DOE Memo and dismiss the remainder of the claims.

Defendants alternatively respectfully request that the Court dismiss this matter.

FED. DEFS' REPLY IN SUPPORT OF MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417

DATED: May 18, 2026                              Respectfully submitted,


                                                 BRETT A. SHUMATE
                                                 Assistant Attorney General
                                                 Civil Division

                                                 ERIC J. HAMILTON
                                                 Deputy Assistant Attorney General

                                                 JOSEPH E. BORSON
                                                 Assistant Branch Director


                                                 /s/ Elizabeth B. Layendecker_____
                                                 ELIZABETH B. LAYENDECKER
                                                 (Cal Bar No. 357429)
                                                 Trial Attorney, U.S. Department of Justice
                                                 Civil Division, Federal Programs Branch
                                                 1100 L Street, N.W.
                                                 Washington, D.C. 20005
                                                 Tel.: (202) 616-5046
                                                 Email: Elizabeth.b.layendecker@usdoj.gov

                                                 *Attorneys for Defendants*

FED. DEFS' REPLY IN SUPPORT OF MOTION TO DISMISS AND TO TRANSFER
CASE NO. 26-CV-1417